DRUMMONDS v. DRUMMONDS

No. 42734 October 21, 1963 156 So. 2d 819

*Barnett, Montgomery, McClintock & Cunningham,* Jackson, for appellant.

*Allen & Patterson,* Brookhaven; *Patterson & Patterson,* Monticello, for appellee.

JONES, J.

These parties are husband and wife, and, as such, they lived together forty years. The wife then filed a bill charging habitual drunkenness and mistreatment, seeking not a divorce but a finding that she was justified in living separate and apart from him, and asking that (A) she be adjudged the owner of money ($16,000) on deposit in the bank; (B) that the lands deeded to her husband be adjudged to be held in trust for both of them, and for a division of such property; (C) that certain furniture and household goods be awarded to her, and (D) that defendant be required to deliver to her certain cattle.

The chancellor held that the evidence did not justify the wife in living separate and apart. No error is as-

signed as to that but the wife appeals from the decree as to the other relief sought. We affirm the case.

There is no question as to the pleadings and we discuss the proof and findings of the chancellor as to the various items.

## A. The Money

Both parties were hard workers and frugal. At different times she picked tomatoes, packed tomatoes, checked lumber, and ran a candy route. He looked after the farm and the cattle, raised feed, cut poles and logged. He said he bought the feed for the cattle. He also testified the cattle were all raised together, she owned some and he owned some.

At one time they had a joint checking account in the bank but the wife closed this account. Later some of the money was returned to the Bank of New Hebron and deposited in the wife's checking account. Then in January 1957, the wife signed a check to the Lawrence County Bank at New Hebron for $5,000 with a notation that it was for a twelve-months' certificate of deposit at three percent, to be inscribed "Mrs. Eleanor Drummonds or J. O. Drummonds." A time certificate of deposit was issued payable to Mrs. Drummonds *or* Mr. Drummonds. It was renewed annually and each renewal included the past year's interest plus an additional amount drawn from Mrs. Drummonds' checking account. Each renewal certificate was payable to either of the parties. The one here involved was the last issued and was for $16,000. The husband conceded the wife was owner of one-half thereof, and by agreement, her one-half was released to her and the other one-half was held in escrow.

The wife testified that she had earned and owned the entire $16,000. She admitted some deposits to her checking account were made by her husband, but she claimed he carried the money to the bank for her — that it was her money.

The husband denied that it was all her money. He charged that most of the $16,000 was earned and saved by him but that he had given his wife one-half thereof. He testified that he had made deposits to her checking account (which subsequently went into the certificate) but could not name the various amounts and dates of deposit. The money so deposited by him, he claimed, was proceeds of sales of cattle and from other sources. The certificate, as stated, was payable to Mr. Drummonds or Mrs. Drummonds.

After hearing the evidence, the court declined to accept the wife's testimony en toto and found: "The evidence discloses that the complainant and defendant were childless and that both labored to acquire property, both real and personal, for their future needs. The complainant has testified vehemently that she jointly aided her husband in the accumulation of the above-mentioned real property but that she worked individually and without his aid for the accumulation of the bank account here in question. The Court finds from her evidence and the evidence of other witnesses that the bank account was a joint accumulation by both of the parties. From this evidence it would be and is an impossibility to state with any degree of certainty as to how much either of the parties contributed to such fund, but it is apparent from the overall testimony, even that of the complainant herself, that it would have been highly improbable for her to accumulate this amount by the labors that she has depicted in her testimony without the aid of the defendant. The Court realizes that it has no authority to arbitrarily divide the sixteen thousand dollars unless there is evidence to support such decision. Here, however, the evidence firmly discloses that the accumulation was a joint accumulation, but it does not disclose to what extent either the one or the other contributed to this amount, nor does the Court feel that a remand to the docket for further proof on

this issue would avail anything specific in regard thereto. Under these circumstances and under the general power of the Chancery Court, the Court concludes that the only equitable thing to do that can be done in the absence of specific proof is to award the remaining one-half of the sixteen thousand dollars to the defendant herein.''

This action of the lower court is in accord with Sec. 374, 10 Am. Jur. 2d 338, towit:

''The peculiar features of a joint and several bank account make it difficult, if not impossible, in most cases, to determine what portion of the account belongs to each depositor. A long series of deposits which cannot be traced to their source, and a similar series of withdrawals which cannot be traced to their destination, are normally involved. This defect is inherent in the severalty feature of such bank accounts wherein each depositor is allowed to treat joint property as if it were entirely his own. A joint bank account of this kind is generally a creature of contract between parties avowedly indifferent to the exact percentage of ownership between themselves. It is said that the law should take them at their word and give effect to their contract without making detailed evidentiary inquiries to establish factual ownership. The prevailing view seems to be, however, that while joint accounts are presumed to be vested in the names as given in the deposit as equal contributors and owners in the absence of evidence to the contrary, the intention of the parties is the controlling factor, and where a controversy arises as to the ownership thereof evidence is admissible to show the true situation.''

See also Park Enterprises, Inc. v. Trach, 233 Minn. 467, 47 N.W. 2d 194, and Sussex v. Snyder, 307 Mich. 30, 11 N.W. 2d 314.

B. The Lands.

There were three deeds of different dates, all made to J. O. Drummonds alone. The wife testified that these

lands were purchased partly with her money and partly on her credit. The husband testified he bought the lands, paid for them, and denied his wife paid any part of the money for them. One deed involved the division of lands inherited by the wife and her brothers and sisters from her father. One of her brothers was deeded part of the lands and the other part was deeded to the husband here. All of the heirs, including Mrs. Drummonds, signed each deed. The heirs, other than the grantee brother and Mrs. Drummonds, were paid a total of $100 each.

The court's findings relative to the deeds were: "The deed to the defendant by W. G. Westmoreland in 1938 was acquired by the defendant paying sixteen dollars in accrued interest and later paying the Federal Land Bank notes against the property as they came due. The testimony does not disclose the interest payment at the time of the deed, the time the trust must arise by implication of law if it arises at all, was in anywise the money of the complainant nor does it disclose that the grantor therein conveyed to the defendant grantee relying solely on the complainant's promise to make the subsequent payments. The Court concludes, therefore, the deed of 1938 was not in trust for the complainant to any interest therein.

"The deed by the heirs of the complainant's father, including the complainant, to the defendant in 1941 was a general warranty deed. The Court is of the opinion that the complainant herein by joining in such deed without limiting her warranty cannot now claim in derogation of such warranty. Further, there is no proof from the evidence that her individual funds were used in the purchase price as to the other heirs. In fact, the proof discloses the payment was made by the grantee from funds borrowed by him from one A. B. Rawls. The court concludes this deed was not in trust to the complainant for any interest for either of the foregoing reasons.

"The deed from W. G. Westmoreland to J. O. Drummonds in 1943 to the twenty-acre tract was acquired for the sum of one hundred dollars. There is no proof from the evidence that this money was that of the complainant and that the defendant acquired the property in trust for the complainant. In the absence of such proof there can be no trust, and the Court concludes that the complainant acquired no interest by way of trust in this twenty-acre tract."

We cannot say the court's finding of no trust was manifestly error.

 █ As to the deed from the heirs, there was no evidence of any form of unconscionable or inequitable conduct in the making of the deed to the husband, 54 Am. Jur., 167, Sec. 218; █ nor was there any evidence from which it could be presumed, implied, or supposed that there was intended to be created a trust. 54 Am. Jur., 147, Sec. 188; Conner v. Conner, 238 Miss. 471, 119 So. 2d 240. The fact that she signed a warranty deed to her husband in the absence of proof of wrongdoing in its procurement might itself cause the court to believe the evidence did not rise to the degree required.

"When it is sought to destroy the sanctity of an instrument, such as a deed, by parol proof, and change its form from the absolute to the conditional, the proof necessary to alter or change the written instrument must be clear, unequivocal, and convincing. See Pomeroy on Equity jurisprudence, Section 1196 and note, column 2, page 2846, and authorities there cited. Some courts have held that this evidence must exclude a reasonable doubt, but we are satisfied to announce the rule in line with the weight of authority that the evidence must be clear, unequivocal, and convincing." Jordan v. Jordan, 145 Miss. 779, 111 So. 102. Conner v. Conner, supra.

## C. and D. Furniture and Cattle

As to these items the evidence was conflicting. The wife first sued for 25 cattle, then asked for a few more. The 25 were surrendered to her and the husband testified that she, since the separation, had sold about 41 head. The chancellor thought she had received her share.

As to the furniture, the husband testified he bought some and she bought some; that she had already carried away all she could and some was still in the house.

We cannot say the chancellor was manifestly wrong in his decree and findings.

In short, when these two people who had been together for decades decided they could no longer so exist, the problem was before the chancellor to determine the issues without the benefit of bookkeeping and records that would be expected in business dealings between those trading at arms' length, and with the conflicts of evidence the case was so decided that we cannot say the chancellor was manifestly wrong. The case is affirmed.

Affirmed.

*Lee, P. J., and Kyle, McElroy and Rodgers, JJ.,* concur.