410 So.2d 1300 (1982)
Patsilu Sheely REEVES
v.
Carl Montgomery REEVES.
No. 53241.
Supreme Court of Mississippi.
February 3, 1982.
Rehearing Denied March 31, 1982.
Harlon H. Varnado, Eddie H. Bowen, Jackson, for appellant.
Richard E. Stratton, III, Brookhaven, for appellee.
Before SUGG, P.J., and WALKER and HAWKINS, JJ.
HAWKINS, Justice for the Court.
Patsilu Sheely Reeves appeals from a final decree of the Chancery Court of the First Judicial District of Hinds County granting her a divorce from her husband, Carl Montgomery Reeves, but only allowing her $6,000.00 lump sum alimony, and decreeing sole ownership in Mr. Reeves of certain certificates of deposit in both their names.
Her appeal has the following assignments of error:
(1) The trial court erred in awarding appellant an insufficient amount in lump sum alimony;
(2) The lower court erred in not awarding appellant a monthly sum for support;

*1301 (3) The trial court erred in not awarding the appellant one-half (1/2) of the certificates of deposits jointly owned by appellant and appellee.
There is no cross appeal. We reverse.
Mr. and Mrs. Reeves married July 23, 1972, and finally separated October 23, 1980. They have no children. Her bill of complaint for divorce on the ground of habitual cruel and inhuman treatment was filed October 24, 1980. She was 31 at the time of the trial in March, 1981. Following their marriage in Starkville, they moved to a one-room apartment in Jackson. Mr. Reeves was employed with the Prudential Insurance Company. When they married, neither owned any realty in Jackson. From their marriage until March, 1973, Mrs. Reeves assisted her husband in his insurance business, typing letters and insurance proposals, looking up numbers in the daily credit report, calling people about mortgage insurance, and taking clients' messages. Mr. Reeves remained with Prudential until the middle of 1978.
Mrs. Reeves worked as a social hostess for Mrs. William Waller from March, 1973, until December, 1974. She then got a job at Hinds Junior College, and eventually taught the hotel-motel-restaurant management program. While employed with Hinds County Junior College, her annual salary increased from $11,555.52 in 1976 to $16,850.00 in 1979. During this time, she attended courses in Business Education one or two nights a week at Mississippi College in 1978. With her salary, she made contributions to the household, paying the utility, grocery and cleaning bills. In December, 1979, she quit her employment, and thereafter worked full-time for her husband.
They purchased in their own names and moved into a house on Glen Mary Street. The house was in poor condition, and Mrs. Reeves worked with her husband, as well as the carpenter, laying tile, renovating the bathroom, removing a ceiling, painting and doing general repair work to the house. The purchase money for the house was financed from funds from Mr. Reeves' father. After improvements were made, Mr. Reeves had an opportunity to sell the property at a profit, and he asked Mrs. Reeves to sign the deed and split the profit of approximately $9,000.00. She signed the deed, but never received any of the profit. Mr. Reeves used the profit to invest in a savings account in the name of his mother and himself. At the time of their separation, the parties owned in their joint name a residence on 5890 Ferncreek Drive in Jackson. Although he did not leave Prudential Insurance Company until 1978, Mr. Reeves formed a company called "Carl Monty Reeves Properties" in September, 1977, and he and Mrs. Reeves started buying houses through a joint bank account. Mrs. Reeves assisted by writing checks, reconciling bank statements, picking up building materials, keeping track of materials, collecting rents, and doing whatever she or her husband felt was necessary to promote the business. She worked from an office they had at their home until December, 1979, when she quit her job. Thereafter she worked full-time at the business office, and did manual labor repairing one of the rental properties. She had her own office in the business office, and helped in collecting rent, preparing leases, paying bills, keeping records, and in generally assisting her husband in the conduct of the business.
Mrs. Reeves received no salary or financial remuneration for any of the work she did during their marriage. All properties were purchased in the sole name of Mr. Reeves, with the exception of their home. He told her that by their working together they could build for their future.
When the parties married, Mr. Reeves told his wife they should save as much as they could and invest it so that they would be able to do what they wanted in later years.
The first property purchased by Mr. Reeves consisted of 35 acres in Lincoln County. Joint funds of the parties were used to make payments on the property, and there were three payments which came from funds Mrs. Reeves had earned or borrowed, namely: November 23, 1975  $1,000.00; November, 1976  $1,455.00; and *1302 May 27, 1977  $1,430.00. Unknown to Mrs. Reeves, Mr. Reeves deeded this property to his mother, Mrs. Clyde M. Reeves, and there is evidence that Mrs. Reeves intended to execute a deed of this property back to her son, but never did.
After the parties separated in October, 1980, Mrs. Reeves was unable to secure employment, and went to Monroe County to live with her mother. Her mother had to support her, and even loaned her the money to pay her attorney's fees in the litigation. Mrs. Reeves was unemployed at the time of the trial.
Mrs. Reeves ground of habitual cruel and inhuman treatment was supported by corroborating evidence, including photographs.
At the trial, the chancellor awarded a final divorce to Mrs. Reeves, but was of the opinion she was able to support herself, and should not receive any permanent alimony. The chancellor was of the opinion she should receive lump sum alimony in the amount of $6,000.00, payable over a six-month period.
The record reflects that Mr. Reeves accumulated a great deal of property, and that his wife materially assisted him in his business, and in his investment practices. She invested some of her own money, as well as funds from their joint account. Additionally, Mrs. Reeves paid the grocery, utility and cleaning bills, which enabled Mr. Reeves to invest additional funds in properties.
On August 31, 1979, Mr. Reeves filed a financial statement with a local bank showing his net worth to be $1,338,500.00. On September 30, 1980, he filed another financial statement with the same bank showing his net worth to be $2,529,800.00. He had certificates of deposit with the Rankin County Bank totaling $106,436.00 which were in force and effect at the time of the trial. In addition to this, Mr. Reeves owned a Lincoln automobile and several other motor vehicles, and there was a great deal of jewelry, gold, silver, and rare coins which had been accumulated during their marriage.
All of the property was in the name of Mr. Reeves, with the exception of the home of the parties at the time of their separation, and five certificates of deposit. Specifically, the five certificates of deposit in the names of both the parties were:
(1) Certificate No. 3300AR dated March 13, 1978, in the principal sum of $2,000.00 with the Rankin County Bank payable to Carl M. Reeves and Patsilu S. Reeves, either of them or the survivor thereof;
(2) Certificate No. 3301AR dated March 13, 1978, in the principal sum of $2,000.00 with the Rankin County Bank payable to Mr. and Mrs. Reeves, either of them or the survivor thereof;
(3) Certificate No. 3302AR dated March 13, 1978, in the principal sum of $2,000.00 with the Rankin County Bank payable to Mr. and Mrs. Reeves, either of them or the survivor thereof;
(4) Certificate No. 3304AR dated March 13, 1978, in the principal sum of $2,000.00 with the Rankin County Bank payable to Mr. and Mrs. Reeves, either of them or the survivor thereof; and
(5) Certificate No. 1050BC dated August 22, 1980, in the principal sum of $11,117.95 with the Rankin County Bank, payable to Carl Monty Reeves or Patsilu S. Reeves.
The chancellor decreed that the sole ownership of these certificates in the joint names of the parties was in Mr. Reeves, and that Mrs. Reeves had no right, title or interest in them.
Mrs. Reeves complains on appeal that she should have been awarded a larger sum in lump sum alimony, permanent alimony, and adjudged the owner of a one-half interest in the certificates of deposit enumerated above.
In Clark v. Clark, 293 So.2d 447 (Miss. 1974), we held that where the wife has, without salary or remuneration, worked in her husband's business and contributed to the accumulation of assets, she is entitled to some share therein. This is such a case. Indeed, in this case Mrs. Reeves contributed her personal funds towards her husband's entrepreneurial ventures. *1303 We agree with the appellant that the award of only $6,000.00 lump sum alimony was so low as to shock the conscience.
This Court would not have considered a lump sum award of $100,000.00 or ten percent (10%) of the husband's net estate unreasonable or unfair under the undisputed facts in this case. We are not suggesting a ceiling or the actual amount the chancellor should award, but we do intend to signal some sense of proportion in cases of this nature. In Jenkins v. Jenkins, 278 So.2d 446 (Miss. 1973), we recognized the propriety of a substantial lump sum award where the husband had accumulated considerable property and the wife's contribution was doing her part as housewife. These holdings, as we stated in Clark, do not make Mississippi a community property state, but further delineate the serious responsibility of a chancellor to make intelligent and fair provision for the wife.[1]
Although Mrs. Reeves was unemployed from the time of her separation through the trial, and also testified that she had been unable to find employment, she offered no evidence as to her future financial needs in the way of support from her husband. The proof showed that she had held responsible and well-paying jobs, and that she is trained and educated to find adequate employment. The chancellor was not in error in failing to provide for permanent or continuing alimony. A reasonable lump sum alimony award can make adequate provision for Mrs. Reeves and do equity in this case.
As to the ownership of the certificates of deposit in the names of both parties, in the case of Drummonds v. Drummonds, 248 Miss. 25, 156 So.2d 819 (1963), this Court adopted the majority rule that joint accounts are presumed to be vested in the names as given on the deposit as equal contributors and owners in the absence of evidence to the contrary, but that the intention of the parties is the controlling factor. We further held that where a controversy arose as to the ownership, evidence is admissible to show the true situation. Mr. Reeves did not testify in this case, and there is no proof in the record showing an intention by the parties to vest ownership in any manner other than that which is shown on the face of the certificates. While the cross-examination of Mrs. Reeves might indicate, without complete persuasion, that the funds for the purchase of the certificates came from receipts or income of Mr. Reeves, this in no way rebuts the presumption of ownership in them both.
We therefore reverse and remand this case for a hearing on the amount which should be awarded as lump sum alimony, and reverse and render judgment for Mrs. Reeves as to ownership of a one-half (1/2) interest in the five certificates of deposit held jointly.
Mrs. Reeves will be awarded an attorney's fee of $1,250.00 for the services of her attorney on this appeal.
REVERSED AND RENDERED AS TO FIVE JOINTLY OWNED CERTIFICATES OF DEPOSIT; REVERSED AND REMANDED AS TO LUMP SUM ALIMONY.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and WALKER, BROOM, ROY NOBLE LEE, BOWLING and DAN M. LEE, JJ., concur.
NOTES
[1] It might even be observed that one of the best justifications for lump sum alimony awards is the fact we are not a community property state.