748 So.2d 819 (1999)
John Alex THORNHILL, Appellant,
v.
Glen CHAPMAN, Appellee.
No. 97-CA-01476-COA.
Court of Appeals of Mississippi.
July 20, 1999.
*820 George C. Williams, Quitman, Attorney for Appellant.
John E. Howell, Meridian, Attorney for Appellee.
EN BANC.
IRVING, J., for the Court:
¶ 1. On February 20, 1991, a certificate of deposit was purchased at Citizen's National Bank in the names of John Alex Thornhill and Glen Chapman. Chapman filed a suit to partition the certificate. Thornhill contended that he provided the funds for the purchase of the certificate and that the certificate belonged to him. He sought to introduce parol evidence to prove his contention. The trial court disallowed the proof and ordered the certificate divided equally between the parties. On appeal Thornhill argues that the trial court erred in not allowing parol or extrinsic evidence to establish the real owner of the funds deposited. He also argues that the trial court erred in ordering the certificate divided equally between the parties.

FACTS
¶ 2. The facts, as established at the trial of this matter by the testimony of Mickey Boler, branch manager of Citizen's National Bank, are that appellant, John Alex Thornhill, and appellee, Glen Chapman, purchased a certificate of deposit from his bank on February 20, 1991. The purchase was in the names of both Glen Chapman and John Alex Thornhill. That very same day a safe deposit box was leased in the names of Glen Chapman or Alex Thornhill. Glen Chapman testified that he purchased the CD on February 20, 1991, and that he did so with a check drawn on his personal account. Each year he received IRS Form 1099 showing the interest earned on the certificate. He further testified that the CD was kept in the jointly leased safe deposit box and was removed by Thornhill *821 on December 31, 1991, but its removal was not discovered by him until March 11, 1994. It was following this discovery that Glen Chapman filed suit for partition of the proceeds from the certificate.
¶ 3. On cross-examination of Chapman, Thornhill attempted to question Chapman about the source of the funds used to purchase the CD. Chapman objected, citing the parol evidence rule. The court sustained the objection, and evidence relative to the source of the money to purchase the CD was excluded.

STANDARD OF REVIEW
¶ 4. What we are presented with here is essentially a question of law. The manifest error/substantial evidence rules have no application to our appellate review of such questions. The principle of "manifest error" applies only to a factual situation. If the chancellor is manifestly wrong in basing his decision upon the facts, then this court will reverse; otherwise, we will affirm. This rule does not apply on questions of law. Cole v. National Life Insurance Co., 549 So.2d 1301, 1303 (Miss.1989) (citing Boggs v. Eaton, 379 So.2d 520, 522 (Miss.1980)); Mississippi State Highway Commission v. Dixie Contractors, Inc., 375 So.2d 1202, 1206 (Miss.1979); S & A Realty Co. v. Hilburn, 249 So.2d 379, 382 (Miss.1971). "With regard to a pure question of law, this Court shall conduct a de novo review." Cole, 549 So.2d at 1303.

ISSUES

I. DID THE CHANCELLOR ERR IN FINDING THAT JOHN ALEX THORNHILL COULD NOT INTRODUCE PAROL OR EXTRINSIC EVIDENCE TO ESTABLISH THE REAL OWNER OF THE FUNDS DEPOSITED IN THE CERTIFICATE OF DEPOSIT?
¶ 5. The chancellor based her findings to exclude parol evidence matters on the authority of Estate of Bodman v. Bodman, 674 So.2d 1245 (Miss.1996) and Cooper v. Crabb, 587 So.2d 236 (Miss.1991). In so doing, she held that parol evidence should not be considered by the court to infer an intent contrary to that emanating from the document itself. In Cooper v. Crabb, the trial court allowed parol evidence to defeat a joint tenancy with right of survivorship created by a CD in the names of a testator and her caretaker. The Mississippi Supreme Court, in reversing the chancellor's ruling admitting parol evidence to defeat the joint tenancy stated:
We search for intent, but when we search for intent we accept that the law directs our search and points first and foremost to the text the parties created. Matter of Estate of Anderson, 541 So.2d 423,428 (Miss.1989). Common sense suggests the parties' writings the most reliable evidence of their intent. Common law directs that, where we find survivorship clauses in the name of the account itself, Weaver v. Mason, 228 So.2d 591, 593 (Miss.1969), in the signature cards, Estate of Isaacson v. Isaacson, 508 So.2d 1131, 1134 (Miss.1987), or in a joint account agreement, Stewart v. Barksdale, 216 Miss. 760, 762, 63 So.2d 108, 109 (1953), we enforce them according to their tenor. The language to which Bethay and Cooper bound themselves, together with the bank, is without ambiguity. It declares the funds represented by the CDs held by them as joint tenants with rights of survivorship
. . .
And if there were any doubt, which there is not, the Legislature in 1988 has enacted a presumption in the case of deposits in the name of two or more persons payable, as here, to any one of such persons or the survivor.
Cooper, 587 So.2d at 240.
¶ 6. Appellant Thornhill argues that the two cases relied upon by the chancellor turned on questions of survivorship, which is not an issue in this case because both Chapman and Thornhill are still alive, and instead would have this court follow Delta Fertilizer, Inc. v. Weaver, 547 So.2d 800 *822 (Miss.1989). Thornhill is correct in his contention that Bodman and Cooper involve a question of survivorship, and survivorship is not an issue in the case sub judice. However, this fact, as will be discussed later, avails him naught. Further, Thornhill's reliance on Delta is misplaced.
¶ 7. This is not a case involving a dispute between a survivor to a joint account and third parties as was the case in Cooper and Bodman, nor is this a case involving one of two living joint owners as was the case in Delta Fertilizer, Inc. What we have here is a dispute between two living joint owners of a certificate of deposit concerning the ownership of the funds represented by that certificate with one of the joint owners seeking to introduce parol evidence to contradict the express terms of the certificate. Cooper and Bodman are clear authority for the proposition that parol evidence may not be used to rebut the presumption of the creation of a right of survivorship in the surviving depositor or joint tenant. Delta Fertilizer, Inc. is a different matter and requires further discussion. In Delta Fertilizer, Inc., Delta Fertilizer, Inc. obtained a judgment against Jack Morgan Weaver d/b/a/ Newton Feeder Service. Delta Fertilizer, Inc. then garnished a bank checking account, a savings account and two certificates of deposit, all of which were held jointly in the name of Jack Morgan and other parties. One of the joint tenants, Mrs. Eleanor D. Weaver, mother of Jack Morgan Weaver filed a motion claiming to be the sole owner of all monies in the various accounts and certificates of deposits. Mrs. Weaver and Jack were the only parties to testify as the hearing on the motion, and both testified that all the funds in the accounts belonged solely to Mrs. Weaver. At the conclusion of the hearing the trial court held that Mrs. Weaver had met her burden of proof and clearly established that the funds that were within the accounts, although Jack's name and another's name were on them, belonged to her. The trial court then dismissed the writs of garnishment. On appeal, our Supreme Court, in affirming the trial court noted that:
There was no objection to any of this testimony [the testimony of Jack and Mrs. Waver] as violative of the best evidence rule.[1] M.R.E. 1002. There was no documentation as to the source of the funds deposited in these accounts.
Delta Fertilizer, Inc., 547 So.2d at 801.
¶ 8. Clearly Delta Fertilizer, Inc., is distinguishable not only because it involved a garnishment action between the non-debtor of one of two surviving joint tenants and a judgment creditor of the other joint tenant, but also because no objection was made to the testimony concerning the ownership of the funds.
¶ 9. Thornhill also cites Drummonds v. Drummonds, 248 Miss. 25, 156 So.2d 819 (1963) for the proposition that parol evidence is admissible to resolve the issue of ownership to funds held in the name of joint owners when a controversy arises over the ownership, even when ownership is presumed to be equal. Drummonds is a divorce case which involved a dispute between the divorcing parties over monies in a joint account. First, there was no issue concerning a parol evidence based objection to the admissibility of the testimony offered concerning ownership of the funds, and secondly, in divorce cases, trial judges have an obligation to equitably divide the assets of the marital estate acquired during the course of the marriage. It is difficult to see how this could ever be done appropriately without allowing evidence from each spouse concerning assets claimed to be exclusively owned by one spouse beyond the pale of the marital estate. Hence, we do not find Drummonds of any value in resolving the issue before us.
¶ 10. Thornhill urges the adoption of the holdings of out-of-state cases, which we *823 need not discuss because there is ample case law within our jurisdiction to resolve the issue which confronts us here. As stated earlier, there was a parol evidence based objection to testimony concerning the source of the funds which were used to purchase the certificate of deposit. The trial court, relying on Cooper and Bodman sustained the objection. Since Chapman had testified, as well as pled in his complaint, that he purchased the certificate of deposit with a check drawn on his account, perhaps the trial court should have allowed the cross-examination. However, we conclude that, while the testimony was perhaps within the bounds of permissible cross-examination in light of Chapman's direct testimony that he had purchased the certificate of deposit with funds drawn on his account, the exclusion of it, as will be shown later, provides no weapon to Thornhill for use in his assault upon the decision reached by the trial judge.
¶ 11. Black's Law Dictionary has this to say about the parol evidence rule:
This evidence rule seeks to preserve integrity of written agreements by refusing to permit contracting parties to attempt to alter import of their contract through use of contemporaneous oral declarations. Under this rule when the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress or mutual mistake.
¶ 12. As stated, the certificate of deposit is in the name of Glenn Chapman or Alex Thornhill and contains the following pertinent statement:
"We" means the financial institution. "You" means the depositor(s) named above [Glenn Chapman or Alex Thornhill]. We will pay the certificate to you when you present and deliver it to us properly endorsed (signed by you), on a maturity date. If more than one of you are named above, you will own this certificate as joint tenants with right of survivorship (and not as tenants in common). You may change this ownership by written instructions.
¶ 13. There is no evidence in this record of any fraud, duress, or mutual mistake, nor is there any evidence that Chapman and Thornhill ever gave any written instructions regarding a contrary ownership to that stated on the face of the certificate of deposit. The ownership stated on the face of the certificate is that of joint tenancy. It can hardly be reasonably argued that the certificate of deposit is not a written contract between the bank, Chapman and Thornhill. Thornhill contends he should have been allowed to introduce evidence which would contradict the ownership as stated on the face of the certificate, that is, that he possessed a several tenancy in the certificate instead of a joint tenancy with Chapman. This is clearly prohibited by the parol evidence rule which prohibits the admission of evidence which is offered for the purpose of contradicting the plain unambiguous terms of a writing, in this case, the certificate of deposit. When a written instrument is clear, definite, explicit, harmonious in all its provisions and free from ambiguity, a court in construing it will look solely to language used in the instrument itself and will give effect to all parts of it as written, and when a contract is clear and unambiguous on its face, its construction is a matter of law and not fact and must be construed and enforced as written. See Pfisterer v. Noble, 320 So.2d 383, 384 (Miss.1975) and Griffin v. Tall Timbers Development, Inc., 681 So.2d 546, 551 (Miss.1996). For the reasons cited we affirm the trial judge's denial of the parol evidence offered to contradict the plain, unambiguous terms of the certificate.

II. DID THE CHANCELLOR ERR IN FINDING THAT GLEN CHAPMAN AND JOHN ALEX THORNHILL JOINTLY OWNED IN *824 EQUAL SHARE THE CERTIFICATE?
¶ 14. The certificate of deposit, by its express terms, provides that it is owned by Chapman and Thornhill as joint tenants.
¶ 15. Black's Law Dictionary defines "joint tenancy" as:
An estate in fee-simple, fee-tail, for life, for years, or at will, arising by purchase or grant to two or more persons. Joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession.... Type of ownership of real or personal property by two or more persons in which each owns an undivided interest in the whole and attached to which is the right of survivorship. Single estate in property owned by two or more persons under one instrument or act.
¶ 16. The right to partition jointly owned property is absolute with the exception of the limitation placed on homestead property. Cheeks v. Herrington, 523 So.2d 1033, 1035 (Miss.1988). Since we have determined that the certificate was jointly owned by Chapman and Thornhill, it follows that partition was proper. Since Thornhill contended that he was entitled to all of the proceeds from the certificate of deposit, it was his burden to prove that fact. After the objection to his evidence was sustained on the basis that the parol evidence prevented its admissibility, he offered the following proffer:
What we would show would be that Mr. Chapman has a life estate on a piece of property that was a life estate that was conveyed to him by John Alex Thornhill on October 19, 1988. That Mr. Chapman paid no consideration for the life estate.
On October 18, 1990, John Alex Thornhill and Glen Chapman executed a timber deed to Brady Brothers Timber Company and sold timber in the amount of $18,000.00. That this $18,000, together with $12,000.00 supplied by Mr. Thornhill was used to purchase the CD.
Mr. Chapman has no funds in the CD. That the interest that was paid to Mr. Chapman was, in turn, given to Alex Thornhill, and they had an agreement that that would be placed in a CD, and the interest would be paid to him as his income was lower than Mr. Thornhill's and there would be no taxes paid. That it was an agreement that this would be deposited in those accounts and that was their understanding.
That, on two occasions, one in a deposition given by Mr. Chapman, he stated that he gave the money that was derived from this timber sale of $18,000.00 to Mr. Chapman, I mean, to Mr. Thornhill, and, also, in an interrogatory submitted in Glen Chapman vs. Twin States Land and Timber Company, and a deposition was also taken of Glen Chapman vs. Twin States Land and Timber Company, Inc. in the Circuit Court of Clarke County, Mississippi, at 96-0098, that he gave this money received from the timber to Alex Thornhill.
That, in actuality, all the money in the CD belongs to Alex Thornhill and the agreement was that they would put it in there and it would draw interest. Interest, in turn, has been paid to Mr. Thornhill.
¶ 17. It is obvious that the proffered evidence was offered to contradict the express terms of the certificate of deposit that the ownership was a joint tenancy because this evidence would show a several tenancy in Thornhill. This evidence, as we have already determined was inadmissible under the parol evidence rule. The trial judge, having no evidence before her, on the percentage of ownership held by Chapman and Thornhill in the joint certificate other than the testimony of Chapman that the certificate was purchased with funds from his account, held that each of them owned a fifty percent interest. It is note-worthy *825 that when Chapman offered into evidence a canceled check to back up his claim that he purchased the certificate of deposit with funds drawn on his account, counsel for Thornhill objected as follows: "I don't see where the relevancy is that what purchased it, Judge. I object to it." At that point counsel for Chapman responded: "Your Honor, I quite frankly agree that you can't go behind the original document for evidence rules and other things, but I feel like he probably will. But, if you will, we mark this for identification". The canceled check was then marked for identification but never admitted into evidence. It is difficult for this court to understand how on the one hand Thornhill argues that he should have been allowed to introduce parol evidence to show the source of the funds used to purchase the certificate of deposit, and on the other hand objects to Chapman doing the same thing for the same purpose. And in Chapman's case, he had a document which would be the best evidence of the source. In other words, it appears that Thornhill's evidence was objectionable not only on the basis of the parol evidence rule but also on the basis of the best evidence rule in light of Chapman's documentation. As previously stated, the trial court had no evidence before it as to the respective percentages of ownership in the jointly held certificate other than Chapman's testimony that he purchased it with funds drawn on his account. The trial judge divided the proceeds of the certificate equally between Chapman and Thornhill. Apparently, this was agreeable to Chapman, since he did not appeal from the trial court's ruling. Perhaps this was so because in actuality the percentage as determined by the trial court correctly reflected the respective ownership held by him and Thornhill. In any event, it appears that Chapman, not Thornhill, made a more persuasive claim to one hundred percent of the certificate. We affirm the decision of the chancellor on this issue.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF CLARKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL IS ASSESSED TO THE APPELLANT.
KING, P.J., BRIDGES, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
SOUTHWICK, P.J., CONCURS WITH SEPARATE OPINION JOINED BY McMILLIN, C.J. MOORE, J., NOT PARTICIPATING.
SOUTHWICK, P.J., CONCURRING
¶ 19. As does the majority, I find that the chancellor applied a statute that is inappropriate for this dispute. The reason the statute is irrelevant is that, fortunately, no one involved in the factual issues is dead. That may be an abrupt way to put matters, but it is the reason that the statute that focuses on survivors' rights is inapplicable.
¶ 20. Though the majority rejects that basis, it nonetheless affirms because of the alternative ground of the parol evidence rule. That rule prevents testimony from overriding express language of agreements. Here, what is being contested is not language of the certificate of deposit agreement but instead an unwritten presumption that arises from the creation of a joint account. Parol evidence is exactly what is admissible to inform the court as to the viability of a presumption.
¶ 21. In 1991 the present disputants purchased a $30,000 certificate of deposit. On the face of the certificate was written that title was held as joint tenants with the right of survivorship. Thornhill wished to introduce evidence that he contributed all of the $30,000, that it was created for an understood purpose other than donating the money to the other named owner, and that in this suit while both are still alive he is entitled to receive all of it back. Unfortunately, the alleged purpose was to permit Chapman to be shown as the recipient of the interest, but Chapman after receiving it would then pay the interest to Thornhill. According to Thornhill's explanation, *826 this allowed the fact that the certificate of deposit was actually solely his own to be hidden. Since Chapman's income was lower, he reported the interest but apparently paid no tax.
¶ 22. If this is what was occurring, and Thornhill argues that it was, then instead of the parol evidence rule, a more fitting bar to Thornhill's suit would be the unclean hands doctrine"that he who comes into equity must come with clean hands" and not to receive the benefit of misconduct. McClellan v. McCauley, 158 Miss. 456, 130 So. 145, 149 (1930). In McClellan, a father made loans, received the payments on the loans, but the notes reflecting the loans were put in his daughter's name in order to evade taxes. The suit was between the executrix of his will and the daughter. A provision in his last will and testament treated the notes as his estate's property and not his daughter's. The father's will explained the reason for the notes being in his daughter's name, asserted that the notes in fact were his property, and then provided for their disposition to someone other than the daughter. The daughter attempted to say that the executrix legally bore the sins of the testator and came into court with unclean hands. Therefore the fact that the notes were in the daughter's name could not be challenged. The court disagreed:
This rule is not for the benefit of the parties to a fraudulent transaction, but rests solely on the idea that society must be protected. In the case at bar we shall assume that Griffin [the father-testator] had a wrong motive in desiring so to invest his money as to defeat the recovery of its just dues by the state. Did he consummate the fraud, and confer anything upon Mrs. Brush [his daughter]?
Id. at 148. Since the notes were never given to the daughter, the doctrine was inapplicable. To give effect to the will actually caused the improper motive to be thwarted. Id. at 148-49.
¶ 23. Conversely, the present case is an attempt to undo the effect of what unclean hands actually accomplished. To compare it to McClellan, it is as if the father were still alive, had actually given the notes to the daughter, and was now trying to receive them back.
¶ 24. This disdain for tax laws may be pervasive, but it is nonetheless civically repugnant and cannot be furthered by this or any court. Since I believe the majority errs as to the parol evidence rule, I address that issue. Nonetheless, since Thornhill has acknowledged his improper motive in appearing to create a jointly owned account in order to evade taxes on money that he actually received, I would permit him no relief. Though both parties participated in the effort, it is Thornhill who seeks the aid of the court to undo the normal presumption of equal ownership. I would not let him do so.
¶ 25. The trial court relied upon a rule that absent fraud, the presumption of joint ownership cannot be overcome to divest the surviving owners of what they gained by the death of another owner. Cooper v. Crabb, 587 So.2d 236, 242-43 (Miss.1991). That is not our question. There is no survivor because there is no decedent. What cannot be accomplished after the death of a party does not control what two living parties can dispute among themselves. Next, a statute the trial court used provides protection against attacks on the joint ownership in two situations. Miss. Code Ann. § 81-5-63 (Rev.1996). The entire lengthy first sentence of the statute protects a bank or other institution who pays out on a joint account to any of the joint owners. Id. This is not a dispute involving the institution that issued the certificate of deposit, where one joint owner is trying to get the institution to pay despite that another owner has already received the entire fund. The next sentence of the statute states that creating a joint account in the ways set out in the statute results in a "presumption in any action or proceeding to which either the *827 bank or any survivor is a party" as to the meaning of the account. Id. That again is not our case, as there is neither a death nor is the bank a party. The remaining miscellaneous terms of the statute are of no application. Id.
¶ 26. What this case involves is a non-statutory right of joint owners of a certificate of deposit to assert that the ownership is not equal. The first part of this analysis is that the equal ownership does not in this case arise from express language in the documentation. The most that the certificate of deposit states is that the depositors "own this certificate as joint tenants with right of survivorship (and not as tenants in common)." The parenthetical is emphasizing that this is a survivorship interest; it is the "joint tenants" language that is key. The question becomes whether a joint tenancy during the lifetime of both tenants is expressly an equal ownership or only presumptively so. In the former case, parol evidence could not override the language of the certificate but, in the latter, parol evidence must be permitted. Moreover, if equal ownership is merely a presumption and not an unalterable fact under a joint tenancy of a certificate of deposit, there would be no need for these two owners to be more precise in the language. Allowing the bank to use this terminology and not taking steps to make it more accurate merely leaves the presumption intact, subject to arguments such as are presented here. Permitting the certificate to be set up this way does risk that a death of one of the co-owners will occur before the matter is raised and settled, which makes the presumption irrebuttable.
¶ 27. To state the point perhaps more clearly, the parol evidence rule provides that evidence
is inadmissible to contradict, or substantially change, the legal import of a written agreement. However, there are numerous exceptions to this rule.... It is obvious from the statement of the rule itself that the testimony sought to be excluded must vary, contradict, or in some manner change the legal import of the writing. Therefore testimony which does not add to, contradict, vary or change the legal import of a contract is admissible where it is offered to explain or assist in construing the document.
Valley Mills v. Southeastern Hatcheries of Miss., Inc., 245 Miss. 71, 79, 145 So.2d 698, 702 (1962). Among the explanations that may be given is the viability of a presumption in a specific case. By definition, if a presumption is relevant it is because the express terms are silent. For example, the court held that the "rule that the description [of property in a deed] runs to the center of the adjoining street is a rule of conveyance, not a mere presumption rebuttable by parol evidence of grantor's intent." Moore v. Kuljis, 207 So.2d 604, 611-12 (Miss.1968). Conversely, had the rule been a presumption, it would have been rebuttable by parol evidence. Delta Fertilizer, Inc. v. Weaver, 547 So.2d 800, 801-2 (Miss.1989).
¶ 28. As the majority itself states, the parol evidence rule "seeks to preserve integrity of written agreements by refusing to permit contracting parties to attempt to alter import of their contract through the use of contemporaneous oral declarations." If "joint tenancy" is not by definition an equal ownership among parties, then to permit Thornhill to introduce evidence regarding the purpose does not alter the import of the agreement. Instead, it explains it.
¶ 29. Joint tenants, in the now largely abandoned tradition of courts to use arcane terminology, were said to be "seized per my et per tout." Bohn v. Bohn, 193 Miss. 122, 5 So.2d 429, 431 (1942). That is the French for "by the half and by the whole," which is "a phrase descriptive of the mode in which joint tenants hold the joint estate, the effect of which, technically considered, is that for purposes of tenure and survivorship each is the holder of the whole, but for purposes of alienation each has only his own share, which is presumed *828 in law to be equal." BLACK'S LAW DICTIONARY 1141(6th Ed.1991) (emphasis added).
¶ 30. There must be unity of title, time, interest and possession in a joint tenancy, Ayers v. Petro, 417 So.2d 912, 914 (Miss. 1982), but the equality is only presumed. When one party contributes all the funds to a joint account, the presumption arises that there exists an "intention to make a present gift of a joint interest in such deposit" and to vest ownership and control jointly. In re Lewis' Estate, 194 Miss. 480, 494, 13 So.2d 20 (1943). Citing Lewis among cases from around the country, one legal encyclopedia states this:
In general, the presumption is rebuttable, at least, under statute, while all of the joint owners are alive ..., but is conclusive and irrebuttable as to the amount remaining in the account on the death of one of the depositors.
48A C.J.S. Joint Tenancy, § 12 (1981) at 336. The specific presumption in question in Lewis was whether a joint tenancy arose at all, and not the narrower question of whether the presumption of equal ownership could be rebutted. That narrower question also is subject to a presumption and rebuttal: "The shares or interests of joint tenants are presumed to be equal, although the contrary may be shown by proof...." 48A C.J.S. Joint Tenancy, § 22 (1981) at 357.
¶ 31. Mississippi law is consistent. In a case in which a certificate of deposit contained the proceeds from the settlement of one spouse's personal injury claim, the court said that it was possible to overcome the presumption that joint tenants were equal owners of funds jointly titled in their names. Regan v. Regan, 507 So.2d 54, 56 (Miss.1987). The lower court had relied upon

Reeves v. Reeves, 410 So.2d 1300 (Miss. 1982) which recognized the rule that joint accounts are presumed to be vested in the names as given on the deposit as equal contributors and owners in the absence of evidence to the contrary, ... 410 So.2d at 1303, citing Drummonds v. Drummonds, 248 Miss. 25, 156 So.2d 819 (1963). The problem here is that there is substantial "evidence to the contrary." There is no dispute that the origin of the funds reflected by the certificate of deposit was the settlement of Lloyd's maritime personal injury claim arising out of his work on an oil rig for Santa Fe Oil Company in the North Sea in September of 1978. The record contains a copy of a settlement draft dated August 14, 1981, issued by underwriters for Santa Fe Oil and payable to Lloyd Ray Regan, Jeanette Regan and their attorney, jointly and severally, in the amount of $225,000.00. There is no suggestion that Jeanette suffered any personal injuries.
Regan, 507 So.2d at 56. The wife's name was on the check and on a release because of "the custom and practice in the settlement of claims such as this that any possible claims of the wife be extinguished as a part of the settlement." Id.
¶ 32. In Regan the evidence explaining the joint account was in writing. I find that of no significance. The parol evidence rule prevents the altering of terms of written agreements by other evidence, whether in writing or testimony. In another divorce case relied upon in Regan, the court stated that despite the presumption of equal ownership, "the intention of the parties is the controlling factor." Reeves, 410 So.2d at 1303. To show intent in Reeves the court looked to the testimony, or absence thereof. Id.
¶ 33. Another case used as authority in Regan also held that testimony could be used to overcome the presumption of equal ownership. Drummonds, 156 So.2d at 822-23. The majority here distinguishes Drummonds because parol evidence was not made an express issue. That may be, but I have already discussed that presumptions unless irrebuttable can always be overcome by parol evidence. In my view, there was no reason for Drummonds to discuss an issue that did not exist.
*829 ¶ 34. Unlike the majority, I also find relevant a case that held in a garnishment action against a joint account, parol evidence was admissible to show that the debtor who was being garnished had not contributed any of the funds in the account. Delta Fertilizer, Inc. v. Weaver, 547 So.2d 800, 801-2 (Miss.1989). The court discussed and rejected as inapplicable section 81-5-63 since neither owner of the joint account was a decedent, which means neither owner was a survivor to which the language of the statute applied. Id. The court recognized a presumption of equal ownership of joint accounts for purposes of resolving garnishment actions, but that the presumption was rebuttable by parol evidence showing the source of funds and other relevant facts. Id. at 802-3. The majority in the present appeal states that the case is beside the point, because it involved a party outside of the deposit arrangement, and again because the issue of parol evidence was not raised. Under the parol evidence rule strangers to a written agreement may at times be able to introduce evidence that the contracting parties could not. Sullivan v. Estate of Eason, 558 So.2d 830, 832 (Miss.1990). However, what is important is that Delta Fertilizer recognizes that equal ownership of joint accounts is only a presumption. It can be overcome. Even had the case involved the parties themselves parol evidence could have been introduced.
¶ 35. Also relevant is case law that when one person opens a bank account in someone else's name, there is a rebuttable presumption of a gift. Carter v. State Mut. Federal Sav. & Loan, 498 So.2d 324, 326 (Miss.1986). In Carter, the court accepted evidence that one party still owned the funds in a bank account that she had opened in someone else's name, looking at whether the named account owner had ever validly received a gift. Id. at 327. In my view, if the sole named owner of an account is subject to having parol evidence end the presumption of ownership, then certainly the ownership interest of multiple owners is subject to parol evidence explanation.
¶ 36. The presumption of equal ownership assists a court in the absence of other evidence as to intent. "Intent" is quintessentially a matter of what individuals say they had in mind. When a party speaks his mind on the stand about his earlier intent, that testimony quite simply is not barred by parol evidence. It is not altering terms. It is explaining terms.
¶ 37. My conclusion does not affect the right of the institution at which the account is located to pay any one owner of an account, even if all owners are still alive, nor affect the survivorship rules. I disagree to any rule that would prohibit one owner of a joint account to litigate with the other owners as to whether the presumption of joint ownership is also the factual reality.
McMILLIN, C.J., JOINS THIS SEPARATE OPINION.
NOTES
[1] Although the opinion says "best evidence rule", it appears that the court may have meant parol evidence rule with respect to the testimony.