HAWKINS, Presiding Justice,
for the Court:
Deposit Guaranty appeals from a judgment against it in the First Judicial District of the Hinds County Circuit Court in the amount of $8,322.25 for failure to withhold the funds of the garnishee.
We are not persuaded by the bank’s contention that the garnishee had no interest in these funds, and affirm.
FACTS
Mr. and Mrs. Art Washington contracted with William E. Jones in November, 1986, to construct a house, agreeing to pay him $70,000, and making a down payment of $2,000. Deposit Guaranty loaned the Washingtons $65,000 in January, 1987, secured by a deed of trust on the house in progress and lot. On January 14, Washington opened a joint construction account in the bank in his and Jones’s names, and in which he deposited funds to pay labor and materials furnished in construction. Jones wrote the checks from this account.
On February 6 Joseph L. and Mary L. Pete got a judgment against Jones in the amount of $22,755. On March 10 Deposit Guaranty was served with a writ of garnishment directed to Jones’s assets. On April 10 the bank answered, stating that it was not indebted to Jones, had none of his effects, and knew of no other person who was indebted to Jones. This answer was contested.
From March 10-April 10, approximately $17,000 was deposited in the account, from which Jones wrote 43 checks. Most of the checks were made payable to laborers and materialmen, but some were to himself. Jones wrote checks to cash, to his business, and one for repairs on his truck, all totaling $8,322.25. In May Jones filed for bankruptcy.
At trial Washington and Jones both testified the funds did not belong to Jones, but to Washington. Jones explained one check to himself for $4,500 during this period as paying for framing and air conditioning, that many laborers did not have drivers’ licenses or other credentials, so he paid them in cash. He had no receipts. Nor did he have receipts for $3,822.25 in checks written to cash to himself to support any allegations that the money went into the Washington house.
One or more officers of the bank made an in-house determination that Jones had no interest in the account, and so advised their counsel who prepared the answer to the writ.
In entering a judgment for $8,322.25 in favor of the Petes against Deposit Guaran *182 ty, the county judge made the following ruling:
... The Bank was fully aware of the contract between Washington and Jones and was aware that Washington was indebted to Jones pursuant to the contract.
The Court is of the opinion that when the Bank took it upon itself to make the determination that the Petes were entitled to none of the funds in the account in question, it did so at its own peril. If the Bank had been correct in its belief that Jones did not “own” any of the money in the account, then no harm would have been done and the Plaintiffs’ contest of its answer would fail.
However, it is apparent that Jones would have been entitled to the full amount of his contract price upon his successful completion of the construction of the house for the Washingtons without regard to the amount he actually expended in the construction. The Bank has taken the position that money in the account was used to pay for the materials and labor in the construction of the house and not to pay Jones for any profit. However, the exhibits clearly show that the sum of $8,322.25 went directly to Jones. Jones claims that said money was used to pay laborers directly in cash. He was unable to offer any receipt or other evidence for the payment of said money other than his testimony. In considering the evidence as a whole and the demeanor of the witness, the Court finds that the Plaintiffs have sustained their burden of proof against the Defendant, Deposit Guaranty National Bank, and are entitled to judgment against the Bank for the amount of funds paid by the Bank directly to the Defendant, William E. Jones, Jr. When the Bank cashed checks made out to Jones on the Jones or Washington account or made to cash signed by Jones on the Jones or Washington account, it had, if only for a brief moment, funds belonging to the Defendant, Jones, which it should have held and paid over to Dr. and Mrs. Pete. The Court finds that the remainder of the funds in the Washington or Jones account belonged to the Washingtons.
(C.P. 116-117)
Deposit Guaranty appeals to us via an affirmance in the circuit court.
LAW
Deposit Guaranty makes six assignments of error, supported by strenuous argument and citations. The sum of the argument, however, is that the money in the joint account belonged to Washington, not Jones, and the county court violated law and equity in rendering its judgment. We are charmed, but not seduced.
This account was clearly one from which Jones was free to write checks as he pleased, and he determined whether or not each check should be written. That it was not a true trust account is shown by the fact that one check Jones wrote was for repairs to his truck, and others were unsupported by receipts or other documentation as to where the proceeds went beyond Jones’s pocket.
An interesting parallel to this case was Cupit v. Brooks, 237 Miss. 61, 112 So.2d 813 (1959), in which Cupit and his second wife held a joint checking account of $334.67. This money came from a restaurant owned by the second wife, but where Cupit worked and was paid a salary of $150 a month. The first wife garnished this account for unpaid child support previously adjudged by the chancery court to be due her in the amount of $1,715.33.
Cupit had upon occasion drawn checks on the account for payment of bills and in making child support payments to his first wife. We held the chancellor did not err in ordering the entire account to be applied on the amount due the first wife. No doubt the second wife considered this entire account her money, yet the indicia of ownership of the husband in writing checks from it, and paying support for his children were sufficient for the chancellor to direct payment of the entire account to the judgment of the first wife.
While a husband and wife relationship is much closer than the relationship between *183 Jones and Washington, 11 A.L.R.3rd 1465, 1469, 1479-1490, the withdrawal by Jones to himself shows it more than a simple trust account. Jones’ actions were indicia of a claim in the funds, and not those of a mere stakeholder or nakéd trustee. We would have an entirely different matter if Jones had scrupulously documented every check and proceeds therefrom going to laborers or materialmen for the house. Jones obviously considered he “owned” some of this money, because he wrote checks to pay his own debts.
Finally, Deposit Guaranty faces an insuperable logical hurdle. The county court gave judgment in favor of the Petes in the identical sum of the checks Jones had written himself. It makes no sense to claim that the money Jones wrote himself was the property of the Washingtons.
Deposit Guaranty knew that the entire construction account was subject to garnishment, and when it was served with the writ, the law presumed the entire account belonged to Jones until evidence was adduced to the contrary. Delta Fertilizer v. Weaver, 547 So.2d 800 (Miss.1989); Miss. Code Ann. 11-35-41 (1972). Yet the Bank on its own did nothing to protect itself or the Petes. Clearly, there was no error in the county court’s holding that the $8,322.25 Jones paid to himself was subject to execution.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., join this opinion.
ROBERTSON, J., concurs with separate written opinion.
SULLIVAN, J., ROY NOBLE LEE, C.J., and BANKS, J., concur with separate written opinion.