McMILLIN, C.J.,
for the Court as to Issue 1.
¶ 1. This appeal arises from a judgment entered on September 5, 2000, in the Chancery Court of the Second Judicial District of Jones County, Mississippi. This cause of action revolves around the death of Barclay Atwood Oliver (B.A.) and a dispute between two of his heirs, Helen L. Oliver (Helen), B.A.’s wife at the time of his death, and James Roger Oliver (Roger), B.A.’s son with his former wife. The action began in chancery court as a will contest, but it was later determined that, because no valid will could be located, B.A. Oliver died intestate. Roger then filed suit against Helen in the Circuit Court of the Second Judicial District of Jones County, citing conversion of funds held in joint tenancy with rights of survivorship between himself, Helen and the deceased. Additionally, Roger claimed that Helen converted funds that were held in certificates of deposit to which Roger was also a joint tenant. Roger later amended his complaint to include charges of conversion of an antique car owned by B.A. and a claim for fraud and fraudulent concealment arising out of Helen’s sale of the antique vehicle.
¶2. On August 12, 1999, the cause of action filed in the circuit court was transferred to chancery court and was consolidated with the original will action, which was still pending. A bench trial was held before Honorable Franklin C. McKenzie, Jr. concerning Roger’s complaints against Helen. The court ruled in favor of Roger in the amount of $266.66 with regard to the dispute over the antique car. However, the court found in favor of Helen on the matter of the joint tenancy accounts. There was no judgment rendered on the claim of fraud. Roger now appeals raising the following issues:
1. Whether the chancery court erred when it found that the appellant was not entitled to a percentage of the funds in an account in joint tenancy with the deceased and the appellee under which the appellant held a right of survivor-ship;
2. Whether the chancery court erred when it found that the appellant was not entitled to a percentage of funds inherited solely by the appellee and first placed in three certificates of deposit naming the appellant as a joint tenant with right of survivorship and then withdrawn and used to buy a life insurance policy naming the appellant as a contingent beneficiary of that policy;
3. Whether the chancery court erred when it found that the appellant was entitled to only one-third of the amount for which the appellee sold the deceased’s antique car rather than one-third of the fair market value of the car at the time of the sale; and
4. Whether the chancery court erred in not addressing the fraud claim brought forth by the appellant before dismissing the case against the appellee when there was viable evidence to support the claim.
FACTS
¶ 3. B.A. and Helen Oliver were married in the state of Arkansas and lived there together in a house owned by Helen before they moved to Mississippi in 1977. Upon moving to Mississippi, Helen sold her home and the funds from that sale were placed in a joint checking account at Deposit Guaranty National Bank under the name of “Mr. B.A. Oliver or Mrs. B.A. Oliver, or James Roger Oliver.” The account was set up explicitly as a joint tenan *1131 cy with rights of survivorship. Helen testified that Roger’s name was placed on the checking account in order that he could retrieve funds for B.A. and Helen if they ever became unable to do so themselves. On the other hand, Roger testified that B.A. told him that his name was on the account because B.A, intended for him to inherit the balance upon the deaths of both B.A. and Helen. All funds deposited into this checking account came from either B.A. or Helen. Roger never deposited funds into this account, nor did he ever have occasion to withdraw funds or write checks on this account.
¶ 4. Not long after Helen had sold her house in Arkansas and moved to Mississippi with B.A., she inherited another home in Arkansas from a close personal friend, along with a sum of money. Altogether, the inheritance amounted to approximately $60,000-$70,000. Helen deposited these funds into the personal checking account belonging to her, B.A. and Roger. However, there is no evidence that those monies were ever used for the benefit of both her and B.A. or for the benefit of Roger. In other words, no proof was put forth to show that those inherited funds were “commingled” with the family bank account. Rather, there was testimony by Helen that she placed those funds in the family bank account for a short period of time until she could decide how to invest the money.
¶5. In fact, not long after Helen received the inheritance, she removed this money from the joint checking account held with B.A. and Roger and purchased certificates of deposit with those funds in the name of “Mr. B.A. Oliver or Mrs. B.A. Oliver or James Roger Oliver.” Helen decided to subsequently redeem these CDs and opted to instead use the money to purchase an asset account with Occidental Life Insurance Company. Roger signed the necessary papers for Helen to cash out the CDs. Roger claims he did this only with the understanding that Helen would name him as a beneficiary on her life insurance policy with Occidental and that he would receive the benefits of that policy upon the deaths of Helen and B.A.
¶ 6. Helen named B.A. as the beneficiary of the Occidental policy and Roger was named as a contingent beneficiary, along with his sister and B.A.’s daughter, Betty Hendrix. The only record of Helen ever using this money out of the Occidental account was when she withdrew approximately $6000 to cover medical bills incurred by both her and B.A. Subsequent to her purchase of this policy, Helen became dissatisfied with her returns on the account and decided to withdraw the money and terminate the policy. The chancery court ruled that the policy was hers to do with what she pleased because the funds used to purchase the policy in the first place were those that she inherited from her friend and were hers alone. All of these aforementioned transactions took place before B.A.’s death.
¶ 7. B.A. died on February 8, 1995. The only will found was one which Helen testified that she had written out for B.A. when he was unable to do so himself and which he planned to sign at some point before his death. This handwritten will purported to leave everything to Helen, Roger and Betty. However, B.A. never signed this will and, as such, the will was invalid and B.A.’s assets were to be distributed by the laws of intestate succession. B.A. was survived by Helen, Roger and Betty.
¶ 8. After B.A.’s death, Helen withdrew all monies from the personal checking account without consulting Roger, a joint tenant with rights of survivorship on the account. On the same day that she closed the account, the record shows that she deposited the entire balance of that ac *1132 count into another checking account, naming her sister-in-law (B.A.’s sister), Mary Killingsworth, as a joint tenant with rights of survivorship instead of Roger or Betty or both. Roger argues that he is entitled to fifty percent of whatever funds were in the account upon his father’s death because that is what his father intended for him and because he has survivorship rights to those funds.
¶ 9. In addition, Roger claims that he is entitled to fifty percent of the inheritance funds that Helen used to purchase the three CDs naming Roger as a joint tenant with rights of survivorship, and later used to purchase the Occidental account naming Roger as a contingent beneficiary. Roger argues that, even though these funds were inherited solely by Helen, the money was commingled with Helen and B.A.’s marital property (the personal checking account) and that a percentage of that money should therefore pass to Roger in succession if not through the right of survivor-ship he held on the CDs. Roger asserts that he and Betty are both entitled to a share of these monies and that, although Betty did not join this lawsuit with Roger, he plans to give her half of whatever he is awarded.
¶ 10. Also in dispute in this case is an antique Ford Galaxy owned by B.A. at the time of his death. The facts surrounding this vehicle are quite convoluted. Roger claims that he and B.A. had an oral agreement that Roger would receive the car upon B.A.’s death. There are no documents or wills to verify this agreement, only Roger’s own testimony and the testimony of Betty repeating what Roger told her. On the other hand, Helen believed the car to be hers upon B.A.’s death and she testified that she sold the car because she did not need it. She did not consult with Roger before she made the sale.
¶ 11. A certificate of title on the Ford Galaxy was produced showing that title had been transferred to Helen subsequent to B.A.’s death. In addition to Helen’s signature on the certificate of title, there were accompanying affidavits produced with the purported signatures of Betty and Roger, in essence, giving Helen permission to have complete rights to the car and do with it whatever she wished. Upon being shown these affidavits, Roger and Betty both immediately charged that the signatures on the lines next to their names were not their own. They both alleged that their names had been forged. Roger amended his complaint in this action to reflect his claim of fraud against Helen for forging his signature and that of his sister. In doing so, Roger insisted that he would have never given Helen permission to sell the car because his father intended for him to have it outright.
¶ 12. Because Helen sold the Ford Galaxy without Roger’s knowledge, Roger asserts that he and Betty are owed a third of the fair market value of the car at the time it was sold. Helen sold the car for $800. The court awarded Roger and Betty each a third of that amount, or $266.66. However, Roger produced a witness adept in appraisals of antique vehicles who testified that the fair market value of the car when it was sold in 1995 was approximately $3400. Roger therefore claims that he is entitled to a third of that amount rather than a third of the selling price because Helen did not sell the vehicle at its true value and because she gained title to the vehicle by fraud.
¶ 13. Although exemplars of Helen, Roger and Betty’s signatures and handwriting were exhibited to the court, along with other evidence pointing toward a forgery of Roger and Betty’s signatures on the affidavits accompanying the certificate of title to the Ford Galaxy, the judge made no findings on Roger’s claims of fraud. Roger asserts that his case against Helen should not have been dismissed in full *1133 when no findings were made as to these claims.
STANDARD OF REVIEW
¶ 14. When this Court is charged with reviewing a decision rendered by a chancellor, we will not disturb the chancellor’s findings unless the chancellor was “manifestly wrong, clearly erroneous, or applied the wrong legal standard.” McNeil v. Hester, 753 So.2d 1057, 1063(¶21) (Miss.2000); Bank of Mississippi v. Hollingsworth, 609 So.2d 422, 424 (Miss.1992). “The standard of review employed by this Court for review of a chancellor’s decision is abuse of discretion.” McNeil, 753 So.2d at 1063(¶ 21); Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc., 716 So.2d 200, 204(¶ 15) (Miss.1998).
¶ 15. In our review of a chancellor’s findings of fact, this Court is limited in that we may not set aside the chancellor’s findings as long as they are supported by “substantial credible evidence.” McNeil, 753 So.2d at 1064(¶ 26). For questions of law, however, the standard is de novo. Id. at 1063(¶ 21).
LEGAL ANALYSIS ISSUE 1
Whether the chancery court erred when it found that the appellant was not entitled to a percentage of the funds in an account in joint tenancy with the deceased and the appellee under which the appellant held a right of survivorship.
¶ 16. Roger bases his claim on the fact that, at the time of his father’s death, whatever interest his father had in the joint account passed as a matter of law to the surviving owners. See Strange v. Strange, 548 So.2d 1323, 1326 (Miss.1989). He contends that, as a result, he immediately became vested with title to an undivided one-half interest in the account along with his stepmother and that she, in effect, converted his one-half interest in the account by withdrawing all the funds.
¶ 17. We disagree. The issue now before us is not decided simply by reference to the fact that the account contained rights of survivorship among the joint tenants and the fact that B.A. Oliver, the third tenant, is now deceased. There is no doubt that, on B.A. Oliver’s death, his rights in the account passed as a matter of law to the remaining joint tenants. The remaining tenants, in fact, ratified the arrangement by going to the bank and reaffirming their intentions to continue their joint ownership of any balances in the account. This put the surviving parties in the posture of having their competing rights to the funds determined, not on principles of survivorship rights, but on “the intention of the parties” in creating (and “re-creating” after B.A. Oliver’s death) the joint account. Harrell v. Harrell, 231 So.2d 793, 795 (Miss.1970).
¶ 18. The chancellor determined that Roger Oliver, unlike Helen Oliver, had never contributed any funds to the account and had never had occasion to write checks drawing funds from the account. Upon so finding, the chancellor concluded, in effect, that it was not the intention of the parties that Roger Oliver have any ownership interest in the account so long as B.A. Oliver or Helen Oliver remained alive, but that Roger Oliver was added to the account as a mere accommodation to his father and stepmother. Nothing that occurred after B.A. Oliver’s death and the reaffirmation of the joint tenancy arrangement between Roger Oliver and Helen Oliver would indicate any change in that situation. The chancellor’s findings of fact are entitled to substantial deference. Lenoir v. Lenoir, 611 So.2d 200, 203 (Miss.1992). There was evidence tending to show that the account had been treated as the primary checking account of Mr. and Mrs. Oliver during the course of their marriage without any par *1134 ticipation by Roger Oliver. There was no affirmative evidence indicating that Helen Oliver and Roger Oliver reached an understanding that the funds would be treated otherwise after B.A. Oliver’s death. On those facts, the chancellor’s finding that Roger Oliver had no equitable claim to any part of the account funds in the joint tenancy he shared with Helen Oliver does not appear manifestly in error.
¶ 19. Whether ownership in the account would have passed to Roger Oliver at the time of Helen Oliver’s death by the contractually-created right of survivorship existing between them is a question not before us. That question has been rendered moot by (a) Helen Oliver’s exercise of her absolute right, as joint tenant, to dispose of the entire balance of the account and (b) the chancellor’s conclusion that Roger Oliver had no equitable claim to compel Helen Oliver to account for any portion of the funds so disbursed. The presumption of equal ownership mentioned in the Harrell v. Harrell decision was, in the chancellor’s view, overcome by affirmative evidence demonstrating a contrary intent between the signatories to the account. We do not find that to be manifestly in error and, therefore, we affirm the chancellor on this issue.
BRIDGES, J., for the Court as to Issues 2, 3 AND 4:
ISSUE 2
Whether the chancery court erred when it found that the appellant was not entitled to a percentage of funds inherited solely by the appellee which were first placed in three certificates of deposit naming the appellant as a joint tenant with right of survivorship and then withdrawn and used to buy a life insurance policy naming the appellant as a contingent beneficiary of that policy.
¶ 20. We find that the monies inherited by Helen from her close personal friend, and deposited for a short period of time into the family checking account, are the property of Helen only and are not subject to division with Roger. Roger argues that these monies became marital property as soon as they were commingled with the family’s funds and that, therefore, a percentage should have passed to him as part of his father’s estate. We find that Roger is incorrect in this assertion.
¶ 21. In Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994), it is true that the Mississippi Supreme Court ruled that commingled funds, including inheritances by only one spouse, become marital assets which are subject to equitable distribution and laws of succession. However, the facts in Johnson show that the inheritance received by the wife in that case was commingled with the family’s money in that she allowed it to be used to the benefit of the entire family. Id. Some of the inheritance money received by the wife in Johnson was even placed in a savings account under the control of her husband rather than herself. Id. We do not have a scenario like the one in Johnson in our instant case.
¶ 22. The evidence in the record shows that Helen simply deposited the inheritance into the family’s checking account in order that it would remain there, untouched, until she could decide what would be a suitable use for it. Roger presents nothing to dispute Helen’s assertion that she removed these monies from the family’s checking account before they could ever be used for the benefit of the entire family. We find nothing in the record which would show that Helen ever intended to use these inherited funds for anyone else’s benefit, such as living expenses for the family or personal loans or gifts to the family. In other words, B.A. and Roger *1135 never benefited from the presence of these monies in the personal checking account for this interim period.
¶23. We are not convinced that the Mississippi Supreme Court meant that any funds obtained by one spouse, which are subsequently commingled with marital funds, automatically become marital property simply because they are placed in the same account. We opine that the intent of the court in Johnson and other cases of its kind was that a party must prove that these commingled funds were not only present in a joint marital account, but were being used for the benefit of the other spouse and/or the entire family. See Johnson, 650 So.2d at 1286. Because the facts in the case at bar do not support that principle, we decline to hold that Roger is entitled to half of Helen’s inheritance by the laws of succession. It is our finding that Helen’s inheritance never became a part of B.A.’s estate and therefore, would not transfer to Roger in any fashion.
¶ 24. As to the CDs first purchased by Helen with her inheritance monies, Roger has no claim. While he was named as a joint tenant with rights of survivorship on the CDs, he voluntarily signed the paperwork supporting Helen’s decision to remove the funds from the CDs, thereby relinquishing any rights that he may have had to those funds. Roger asserts that he only gave his approval because he was told by Helen that she would make him a beneficiary to the life insurance policy which she planned to purchase with the remaining portion of her inheritance.
¶ 25. We find that Helen was under no legal obligation to make Roger a beneficiary of the account with Occidental. Helen, as the owner of the policy, was well within her rights to choose whomever she pleased as her beneficiaries. Helen did make Roger a contingent beneficiary to this policy; however, nothing prevented Helen from changing her beneficiaries as she saw fit until the end of her life. That is the purpose of such a policy. As such, we find that Roger has no claim to Helen’s inheritance by way of the Occidental account. It is our opinion, which is supported by the evidence in this case, that Helen retained control of her inheritance monies all throughout her various investments. There is no evidence that she relinquished that control to anyone, including B.A. or Roger. We conclude that the proof in the record supports the fact that she simply made business decisions that she felt would give her the best returns on her inheritance. We can find nothing that would suggest that Helen exercised her options through anything but proper channels. Therefore, Roger is not entitled to these inheritance funds through the laws of succession, through rights of survivor-ship in the CDs or through his status as contingent beneficiary of the now canceled Occidental policy.
ISSUE 3
Whether the chancery court erred when it found that the appellant was entitled to only one-third of the amount for which the appellee sold the deceased’s antique car rather than one-third of the fair market value of the car at the time of the sale.
¶ 26. For this Court to come to a final conclusion in the dispute over the value of the 1966 antique Ford Galaxy, we would be putting the cart before the horse. First and foremost, this Court has not been informed through any documents submitted in the record as to who was named as the administrator of B.A.’s estate. Whoever this person may be, if there is one, he or she is charged with having B.A.’s estate appraised before any property belonging to B.A. may change *1136 hands between any of his heirs. See Miss. Code Ann. § 91-7-55 (Rev.1994). According to our statute on the subject of administrating intestate estates, the first duty of the administrator, after taking his oath to faithfully discharge his duties and paying bond to the state, is that he must have the estate appraised, including all of the property, real and personal, therein. Id. This includes making a complete inventory before the court of all property within the deceased’s estate. Id.
¶ 27. After submitting an inventory, the administrator must then collect all of this appraised property and keep it in his care until such time as it is to be distributed equally to the lawful heirs of the deceased. Miss.Code Ann. § 91-7-57 (Rev.1994).
¶ 28. We have no record of who the administrator was in this case, much less an inventory of B.A’s property at the time of his death. Had the proper steps been taken by the court, an administrator would have been appointed to discover the value of everything in B.A.’s estate, including the Ford Galaxy. This should have been done before the court entertained a dispute such as the one we have before us. Helen should not have had possession of the car, nor should she have been allowed to sell the car before an assessment was made as to its value and its rightful owner. Everyone involved in this case seems to have overlooked this very important step on the ladder to the proper distribution of B.A.’s belongings. We do not know whether, at the time of B.A.’s death, the Ford Galaxy would have been valued at $800 or $3400, more or less, or somewhere in between. If there was a proper inventory taken after B.A. died, the value of the car should be included and that amount shall serve as the amount to be divided between Helen, Roger and Betty.
¶ 29. As such, we also remand this issue to the chancery court for a hearing on whether a proper inventory was taken of the entirety of B.A.’s estate, including the Ford Galaxy. If there was no inventory taken of B.A.’s estate, and no reason given as to why not, then we instruct the chancery court to appoint an administrator immediately to take inventory of what remains. Further, in the absence of a previous inventory, we instruct the chancery court to seek further evidence, such as expert testimony, to determine the fair market value of the car at the time of B.A.’s death. When evaluating this expert testimony, all repairs, damage and defects of the car present at the time of the sale should be taken into account before the court rules on a fixed value. Although John Anderson, an expert on antique vehicles, did testify at the original lower court hearing, his was the only testimony to this effect and no rebuttal testimony or corroborating testimony was sought or used in the court’s decision. The chancery court should access all channels of information in coming to a decision on the value of the Ford Galaxy since the car itself is no longer in the possession of the Oliver family and cannot now be retrieved for purposes of appraisal.
¶ 30. After uncovering the appropriate value of the vehicle, whether through a previous inventory of B.A.’s estate or through a new hearing to seek out this information, the chancery court is instructed to award a third of that value each to Helen, Roger and Betty.
ISSUE 4
Whether the chancery court erred in not addressing the fraud claim brought forth by the appellant before dismissing the case against the appellee when there was viable evidence to support the claim.
¶ 31. This issue overlaps somewhat with the prior issue in this case. *1137 Before an individual may sell property to an interested buyer, that individual must be the rightful owner of that property. Regency Nissan, Inc. v. Jenkins, 678 So.2d 95, 101 (Miss.1995). In the case at bar, finding the rightful owner of the Ford Galaxy at the time of the sale requires us to delve into whether or not the certificate of title showing Helen as the owner, accompanied by affidavits with the signatures of Roger and Betty releasing their interests in the car to Helen, was a valid document. Roger and Betty both claim that they did not sign any affidavit surrendering their interests in the car to Helen. For that matter, Helen claims that her signature was forged on the affidavits as well. Both parties presented evidence on this issue. The results of handwriting tests proved inconclusive.
¶ 32. It is necessary to get to the bottom of who forged these signatures, if there was a forgery at all, and whether fraud was perpetrated on the court and on the parties to this case, in order that proper ownership and succession of the car may be established. However, because the chancery court made absolutely no findings in regard to this alleged fraud, we cannot rule on whether those findings were correct or incorrect. Therefore, on remand, this issue should be resolved by the chancery court and further findings should be made as to whether there is any merit to the fraud claim brought by Roger against Helen.
¶ 33. In sum, this Court affirms this matter as to the issues of the joint checking account and certificates of deposit, and reverses and remands this matter as to the issues of the value of the Ford Galaxy and the fraud claim. The chancellor’s findings that Roger Oliver had no equitable interest in the joint checking account or certificates of deposit were not manifest error, therefore we affirm the chancellor on these issues.
¶ 34. We reverse the chancellor’s decision as to the value of the Ford Galaxy at the time that it was sold by Helen and order that the chancery court conduct a hearing on whether an appropriate value was attached to the car through the administrator’s inventory of B.A.’s estate. If so, this Court finds that Helen, Roger and Betty are each entitled to one-third of that amount. If there was no proper inventory taken, it is the order of this Court that a separate hearing be conducted as to the proper value that should be attached to the car at the time of the sale, and one-third of that determined amount should be awarded each to Helen, Roger and Betty.
¶ 35. Lastly, we remand the issue of the fraud claim to the chancery court in order that findings be made as to the true identity of the owner and successors of the Ford Galaxy and whether a fraud was perpetrated on the courts and on the parties in this case.
¶ 36. THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION AS TO THE ISSUE OF THE VALUE OF THE ANTIQUE CAR, AND AS TO THE ISSUE OF THE LOWER COURT’S ABSENCE OF FINDINGS ON THE FRAUD CLAIM. JUDGMENT IS AFFIRMED AS TO THE ISSUE OF THE JOINT CHECKING ACCOUNT, AND WHETHER THE APPELLANT IS ENTITLED TO A PERCENTAGE OF FUNDS INHERITED SOLELY BY THE APPELLEE AND INVESTED INTO CERTIFICATES OF DEPOSIT HELD IN JOINT TENANCY WITH THE APPELLANT AND LATER A *1138 LIFE INSURANCE POLICY NAMING THE APPELLANT AS A CONTINGENT BENEFICIARY. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO BOTH THE APPELLANT AND THE APPELLEE.
AS TO ISSUE 1: McMILLIN, C.J., SOUTHWICK, P.J., MYERS and CHANDLER, JJ., CONCUR.
BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS, LEE AND BRANTLEY, JJ.
AS TO ISSUES 2, 3 AND 4: McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.
KING, P.J., and IRVING, J., CONCUR IN RESULT ONLY.