BARNES, J., for the Court:
 

 ¶ 1. The parties in this case are the children of Audrey and William Delbert Bohannon, both deceased. Josie Smith and Bennie Bohannon filed suit in the Circuit Court of Prentiss County against their siblings, Marie Stevens and William Edward Bohannon (Edward), claiming conversion of their interest in two jointly owned savings accounts and a jointly owned certificate of deposit (CD). The trial court granted summary judgment in favor of Josie and Bennie, finding that their siblings had deprived them of their ownership interest in the funds through conversion. Marie and Edward timely appealed. Finding no error, we affirm.
 

 STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. The facts in this case are not in dispute. Before their parents’ death, the four parties had opened two savings accounts and a CD for the benefit of their parents: a savings account with First American National Bank (First American) and a savings account and CD with Farmers & Merchants Bank (Farmers & Merchants). Each of these three funds was in the name of all four siblings. Each account required the signature of any two of the four parties to withdraw funds.
 

 ¶ 3. The parties’ parents, Audrey and William, passed away in October 12, 2002, and March 3, 2006, respectively. On February 24, 2006, Marie and Edward withdrew $18,230.87 from the CD and $4,881.01 from the savings account, both at Farmers & Merchants. Then, on March 2, 2006, the day before their father passed away, Marie and Edward also withdrew $8,664.14 from the savings account at First American. Marie and Edward placed these funds in “a safe place,” stating they were going to use the money for repairs on a house previously owned by their father, in which all of the siblings have an ownership interest. However, Marie and Edward admitted that, upon the death of their parents, the money was to belong to all four of the siblings.
 

 ¶ 4. In June 2006, Josie and Bennie filed a complaint against Marie and Edward for conversion of their interest in the jointly held savings accounts and CD. Discovery ensued, and the parties’ depositions were taken. Marie and Edward admitted that the three funds were jointly held by all of
 
 *1232
 
 the siblings and that each sibling possessed an equal ownership interest in the accounts. All of the parties also agreed the accounts were set up for the benefit of their parents and would be divided equally upon the deaths of their parents. It was also undisputed that Marie and Edward possessed lawful authority to make the withdrawals from the three joint funds.
 

 ¶ 5. In July 2008, Marie and Edward filed a motion for summary judgment, claiming that they had absolute authority to withdraw funds from the accounts at issue; thus, there could be no conversion as a matter of law.
 
 [1]
 
 Josie and Bennie filed a response and counter-motion for summary judgment claiming they have an ownership interest in the funds at issue that was being wrongfully withheld from them. The trial court held a hearing on the motions, and an order was subsequently entered stating the parties agreed that no genuine issues of material fact remained and the parties now sought judgment as a matter of law. The trial court denied Marie and Edward’s motion for summary judgment and granted Josie and Bennie’s counter-motion for summary judgment, finding Marie and Edward had deprived Josie and Bennie of their ownership interests in the funds by conversion. A judgment of $13,457.50 was entered against Marie and Edward.
 
 [2]
 

 ¶ 6. Marie and Edward timely appealed raising two issues: (1) the trial court should have upheld Marie’s and Edward’s right and authority to dispose of the entire balance of the savings accounts and CD, and (2) the trial court should have examined the intent of the parties in establishing these three funds before finding a claim for conversion as a matter of law.
 

 STANDARD OF REVIEW
 

 ¶ 7. This Court applies a de novo standard of review to the trial court’s grant or denial of a motion for summary judgment. Moss
 
 v. Batesville Casket Co.,
 
 935 So.2d 393, 398 (¶ 15) (Miss.2006). Summary judgment shall be granted if “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 
 Id.
 
 at (¶ 16) (quoting M.R.C.P. 56(c)). The trial court must review the evidence in the light most favorable to the nonmoving party.
 
 Id.
 

 ANALYSIS OF THE ISSUES
 

 I. Jointly Held Accounts
 

 ¶ 8. Marie and Edward assert that the trial court erred in granting summary judgment as a matter of law on the conversion claim because they had the right and authority to dispose of the entire balance of the subject accounts as they saw fit, regardless of whether they were joint account holders with their siblings, Josie and Bennie. The parties agree that there is no factual dispute in this case — the only issues remaining are legal. It is also undisputed that Marie and Edward had lawful authority to make the withdrawals from the accounts. At issue, however, is whether Marie and Edward had lawful authority
 
 *1233
 
 to deprive Josie and Bennie of their ownership interest in the accounts by depositing the withdrawn funds in an account that was inaccessible to Josie and Bennie. We agree with the trial court’s finding that Marie and Edward did not have this authority.
 

 ¶ 9. To establish the tort of conversion, “there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner’s right, or of an unauthorized and injurious use, or of a wrongful detention after demand.”
 
 Cmty. Bank, Ellisville, Miss. v. Courtney,
 
 884 So.2d 767, 772-73 (¶ 10) (Miss.2004) (quoting
 
 Smith v. Franklin Custodian Funds, Inc.,
 
 726 So.2d 144, 149 (¶ 20) (Miss.1998)). The intent required does not have to be that of a wrongdoer.
 
 Id.
 
 at 774 (¶ 15) (citing
 
 First Investors Corp. v. Rayner,
 
 738 So.2d 228, 235 (¶ 28) (Miss.1999)). Regarding joint accounts, it is well settled in Mississippi that joint-account holders have given each other absolute authority over an account “and the unconditional power to withdraw all or any part of the account.”
 
 Triplett v. Brunt-Ward Chevrolet, Oldsmobile, Pontiac, Buick, Cadillac, GMC Trucks, Inc.,
 
 812 So.2d 1061, 1066 (¶ 9) (Miss.Ct.App.2001) (citing
 
 Deposit Guar. Nat’l Bank v. Pete,
 
 583 So.2d 180, 184 (Miss.1991)).
 

 ¶ 10. The parties’ deposition testimony established the following details about the accounts. Edward verified his signature on the account card for the savings account at Farmers & Merchants. Edward did not have any involvement in establishing the CD; however, he was involved in establishing the savings account at First American. Edward verified his signature and the signature of Josie on this account, which was opened in November 1998. Edward stated that all of the parties have an interest in their parents’ house and that it needs repairs in order to obtain a sale price close to its potential value, and he proposed repairing it prior to Josie and Bennie’s instant lawsuit. Marie did not have any involvement in establishing any of the accounts. She testified that Josie and Bennie deleted her name from a separate joint account not subject to this lawsuit and withheld the proceeds from her. Therefore, Marie withdrew funds from the accounts at issue and put the money in “a safe place.”
 

 ¶ 11. Josie verified her signature on the savings account card at Farmers & Merchants. Josie was involved in establishing all three accounts, which were all jointly owned among the siblings with rights of survivorship. The signature of two account holders was required for withdrawal on each account. Josie stated that her father allowed her to withdraw money from his checking account, which is not at issue in this lawsuit, to help her out. Bennie also testified that all three accounts were jointly owned by him and his siblings with rights of survivorship. He stated that he and Josie had written checks from his father’s checking account for personal use and that his father helped him out financially.
 

 ¶ 12. From the evidence presented, Marie and Edward, as joint-account holders, had the absolute right to withdraw all or part of the funds from the accounts in February and March 2006. Further, there is no dispute that they utilized the correct procedure in doing so; the banks only required two of the four account holders’ signatures. However, when they placed the funds “in a safe place” of a separate account inaccessible to Josie and Bennie, they effectively deprived Josie and Bennie of their ownership interest in the funds. As the trial court noted, “the act of withdrawal did not eliminate the Plaintiffs’ ownership interest in the funds.” The exercise of dominion over the funds by Marie and Edward, and not the withdrawals, deprived Josie and Bennie of their right to
 
 *1234
 
 an equal interest in the funds and, thus, constituted conversion.
 

 ¶ 13. In
 
 Drummonds v. Drummonds,
 
 248 Miss. 25, 156 So.2d 819 (1963), the Mississippi Supreme Court stated that joint accounts are presumed to be vested in the names of the account depositors as equal contributors and owners in the absence of evidence to the contrary; however, intent of the parties is the controlling factor.
 
 Id.
 
 at 31, 156 So.2d at 821. The court explained the nature of joint-tenancy accounts as follows:
 

 The peculiar features of a joint and several bank account make it difficult, if not impossible, in most cases, to determine what portion of the account belongs to each depositor. A long series of deposits which cannot be traced to their source, and a similar series of withdrawals which cannot be traced to their destination, are normally involved. This defect is inherent in the severalty feature of such bank accounts wherein
 
 each depositor is allowed to treat joint property as if it were entirely his own.
 
 A joint bank account of this kind is generally a creature of contract between parties avowedly indifferent to the exact percentage of ownership between themselves. It is said that the law should take them at their word and give effect to their contract without making detailed evidentiary inquiries to establish factual ownership.
 
 The prevailing view seems to be, however, that while joint accounts are presumed to be vested in the names as given in the deposit as equal contributors and owners in the absence of evidence to the contrary, the intention of the parties is the controlling factor, and where a controversy arises as to the ownership thereof evidence is admissible to show the true situation.
 

 Id.
 
 (quoting 10 Am.Jur.2d
 
 Banks
 
 374 (1963)) (emphasis added);
 
 see also Harrell v. Harrell,
 
 231 So.2d 793, 795-96 (Miss.1970) (quoting 10 Am.Jur.2d
 
 Banks
 
 374 (1963)) (joint accounts presumed to be vested in names of depositors “as equal contributors and owners” but “controlling factor” is “intention of parties”).
 

 ¶ 14. Marie and Edward cite to
 
 Oliver v. Oliver,
 
 812 So.2d 1128 (Miss.Ct.App. 2002) and
 
 DeJean v. DeJean,
 
 982 So.2d 443 (Miss.Ct.App.2007) in support of their argument that the claim for conversion was not warranted, as Marie and Edward had the right and authority to dispose of the entire balance of the subject accounts. We find their reliance on these cases misplaced. In
 
 Oliver,
 
 the plaintiff, Roger Oliver, claimed conversion of funds held in joint tenancy with rights of survivorship among himself, his step-mother Helen Oliver, and his deceased father, B.A. Oliver.
 
 Oliver,
 
 812 So.2d at 1130 (¶ 1). Oliver claimed that he owned an undivided one-half interest in the account at issue after his father’s death and that his step-mother in effect converted his one-half interest by withdrawing all of the funds.
 
 Id.
 
 at 1133 (¶ 16). This Court affirmed the chancellor’s finding that Roger did not have an ownership interest in the account because this was not the parties’ intent.
 

 ¶ 15. If Marie and Edward are correct, the analysis in
 
 Oliver
 
 would have ended once Helen withdrew the funds, because the court would have had no need to examine the parties’ intent. However,
 
 Oliver
 
 goes on to examine the chancellor’s finding of the intent between the parties regarding the ownership of the joint funds. The chancellor found that Roger had no ownership interest in the account as long as his father and step-mother were alive; he was added to the account as a “mere accommodation.” Evidence showed Roger had not contributed to the account, and it had been treated as a primary checking account by his father and step-mother.
 
 Id.
 
 at 1133 (¶ 18). Further, there was no affirmative evidence that the funds would be treated
 
 *1235
 
 any differently after his father’s death.
 
 Id.
 
 at 1134 (¶ 18). This Court upheld the chancellor’s ruling that Oliver had no equitable claim to any of the jointly held funds during the life of Helen, even though he held a right of survivorship.
 
 Id.
 
 at 1138— 34 (¶¶ 17-18). The Court explained:
 

 Whether ownership in the account would have passed to Roger Oliver at the time of Helen Oliver’s death by the contractually-created right of survivorship existing between them is a question not before us. That question has been
 
 rendered moot by
 
 (a) Helen Oliver’s exercise of her absolute right, as joint tenant, to dispose of the entire balance of the account
 
 and
 
 (b) the chancellor’s conclusion that Roger Oliver had no equitable claim to compel Helen Oliver to account for any portion of the funds so disbursed.
 
 The presumption of equal ownership
 
 mentioned in the
 
 Harrell v. Harrell
 
 decision
 
 was,
 
 in the chancellor’s view,
 
 overcome by affirmative evidence
 
 demonstrating a contrary intent between the signatories to the account. We do not find that to be manifestly in error and, therefore, we affirm the chancellor on this issue.
 

 Id.
 
 at 1134 (¶ 19) (emphasis added). We find Marie and Edward’s citation to
 
 Oliver
 
 only addresses the first half of the inquiry — Helen’s absolute right to dispose of the entire balance of the bank account, but had Helen not been able to disprove the presumption of equal ownership, she would have been liable to Roger for an accounting.
 

 ¶ 16. Marie and Edward also cite
 
 DeJe-an.
 
 In
 
 DeJean,
 
 a brother, Patrick DeJean, and sister, Julia Mae DeJean, jointly owned a CD with rights of survivorship.
 
 DeJean,
 
 982 So.2d at 445 (¶ 1). Julia Mae instructed the bank to redeem the CD with the proceeds reissued to a new CD in her and two other relatives’ names, Heywood and Christine DeJean. Before the new CD was issued, Julia Mae died.
 
 Id.
 
 at 446 (¶ 1). Patrick filed a petition for declaratory judgment against Heywood and Christine DeJean and Hancock Bank, seeking to be declared the sole owner of the original CD, and the return of funds transferred to the new CD. After trial, judgment was entered in favor of Christine and Heywood.
 
 Id.
 
 at (¶2). On appeal, Patrick argued, inter alia, that the original CD was not redeemed before his sister’s death; therefore, he was the sole owner by survivorship. Alternatively, he contended that he should be granted an equitable division of the new CD based upon the source of funding in the original CD, which was a family inheritance.
 
 Id.
 
 at 449 (¶ 14). In a five-to-four decision, this Court affirmed the chancellor’s determination that the CD had been redeemed prior to Julia Mae’s death, and we further held that Patrick was not recognized as half owner of the new CD.
 
 Id.
 
 at 447-48, 450 (¶¶ 6, 14). In its second holding, this Court relied upon
 
 Drummonds,
 
 stating: “When an account is held jointly in the name of one depositor or another,
 
 each depositor is allowed to treat joint property as if it were entirely his own.’
 
 ”
 
 Id.
 
 at 450-51 (¶ 14) (quoting
 
 Drummonds,
 
 248 Miss, at 31, 156 So.2d at 821) (emphasis added). The Court held that since Julia Mae had a right to redeem the CD without Patrick’s consent, Patrick was not entitled to be awarded one-half interest in the new CD. Id.
 
 [3]
 

 ¶ 17. Marie and Edward interpret
 
 De-Jean
 
 to stand for the proposition that the first party to remove the funds is the sole
 
 *1236
 
 owner, and the inquiry ends there. We disagree. We interpret
 
 DeJean
 
 in accord with
 
 Smith v. Smith,
 
 656 So.2d 1143 (Miss.1995).
 

 ¶ 18. In
 
 Smith,
 
 the husband filed a complaint for divorce together with a complaint for a temporary restraining order (TRO) requiring the wife to redeposit $38,750 she had withdrawn from a joint account established by her husband with his non-marital assets.
 
 Id.
 
 at 1146. An initial TRO was granted, and the wife redeposited approximately $32,500 into the account, having spent the remainder. The final order, issued by a different chancellor, found that the wife was “entitled to withdraw the $32,500.00 from the joint savings account” and denied all relief, thereby reversing the effect of the TRO.
 
 Id.
 
 On appeal, the supreme court affirmed, holding that since the husband had given the wife authority to withdraw the funds by placing her name on the joint account, he was not entitled to a TRO requiring the wife to return the funds. The supreme court continued, however, that it was resolving only the issue of the injunction and not ownership of the funds. The court noted that the husband “may be entitled to establish his interest in the proceeds of the account and establish a debt owing from [his wife] to him in proceedings brought for that purpose.”
 
 Id.
 
 at 1148. Thus, while there was an absolute right of joint-account owner to withdraw funds from the account, that right did not resolve the “ownership” of the funds so withdrawn.
 

 ¶ 19. Similar to the issue of the TRO in
 
 Smith,
 
 the
 
 DeJean
 
 Court was asked to determine whether Patrick was to be declared half owner of the new CD held by Christine and Heywood. This Court relied on
 
 Drummonds
 
 and held he was not.
 
 De-Jean,
 
 982 So.2d at 449-50. The issue of whether Julia Mae (or her estate) would have been accountable to Patrick for his equitable share of the original CD was not an issue before the Court. In the case before us, the trial judge did not seek out the funds held by Marie and Edward in the “safe place” and give Josie and Bennie an ownership in that account; instead, he awarded Josie and Bennie a judgment against Marie and Edward in the amount of $13,447.50. We find this result to be in keeping with
 
 Smith.
 

 [4]
 

 
 *1237
 
 ¶ 20. Accordingly, we agree with the trial court that the unauthorized exercise of dominion by Marie and Edward over all of the funds from the three accounts constituted conversion as a matter of law, because they deprived Josie and Bennie of their ownership interest in the accounts.
 

 II. Intent
 

 ¶ 21. Marie and Edward make the alternative argument that if we find they were not allowed to treat the subject funds “as their own,” summary judgment was still improper, as the trial court should have examined the parties’ intent in establishing and maintaining the three accounts to determine the percentage of ownership split between the four parties. Additionally, Marie and Edward maintain that the trial court should have taken into consideration the parties’ understanding regarding the whole of their parents’ estate to resolve the issue of conversion.
 

 ¶ 22. Marie and Edward cite to
 
 Drum-monds
 
 in support of their argument: “The prevailing view seems to be, however, that while joint accounts are presumed to be vested in the names as given in the deposit as equal contributors and owners ... the intention of the parties is the controlling factor, and where a controversy arises as to the ownership thereof evidence is admissible to show the true situation.”
 
 Drummonds,
 
 248 Miss. at 31, 156 So.2d at 821 (quoting 10 Am.Jur.2d § 374). Here, however, unlike
 
 Drummonds,
 
 there is no conflict in the evidence about what ownership interest each party had — it is undisputed all four parties had an equal ownership interest. Further, as stated earlier, testimony shows that when the accounts were set up, the intent of the siblings was to have an equal share in the funds after their parents passed away. The suggestion by Marie and Edward to examine the “whole of the parents’ estate” is not possible since no estate proceedings have been opened for either parties’ deceased parents. The evidence is clear and undisputa-ble that each party was to have an equal ownership interest in the accounts. Further, there was no testimony that the intent of the parties was to review the entire estate. There was no evidence offered to overcome the presumption of equal ownership; the undisputed facts establish that the parties’ intent was in conformity with that presumption. This issue is without merit.
 

 CONCLUSION
 

 ¶ 23. The trial court did not err in granting summary judgment in favor of Josie and Bennie. The parties agreed that there was no dispute as to the facts of the case. As a matter of law, Marie and Edward deprived Josie and Bennie of their ownership interests in the accounts, thereby committing the tort of conversion. Therefore, we affirm the judgment of the trial court.
 

 ¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF PRENTISS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 LEE, C.J., IRVING AND GRIFFIN, P.JJ., MYERS, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.
 

 [1]
 

 . At the time of Marie and Edward’s motion for summary judgment, no estate proceedings had ever been opened for either deceased parent.
 

 [2]
 

 . This amount represents a one-half interest in the withdrawals by Marie and Edward of $18,230.87 from the CD at Farmers & Merchants, and $8,664.14 from the savings account at First American, but it excludes a one-half interest in the $4,881.01 withdrawn from the savings account at Farmers & Merchants. This may be a mathematical error on the part of the trial court; Josie and Bennie have not, however, cross-appealed on this issue.
 

 [3]
 

 . The dissent in
 
 DeJean
 
 would have reversed on the issue of whether the original CD was redeemed before Julia Mae died and, thus, did not reach the issue of whether the chancellor should have granted Patrick an equitable division of the new CD.
 
 Id.
 
 at 453 (¶ 30) (Roberts, J., dissenting).
 

 [4]
 

 . Further research indicates Mississippi is in accord with other states regarding joint accounts and conversion claims. Tennessee, Florida, and Idaho have all found a claim for conversion in circumstances similar to the instant case. In
 
 Knight v. Lancaster,
 
 988 S.W.2d 172, 176 (Tenn.Ct.App.1998), evidence did not overcome the presumption that joint-tenancy accounts between a brother and sister were owned equally. The Tennessee court held that "[ejven though a joint tenant may withdraw the entire fund, one who does withdraw funds in excess of his moiety is liable to the other joint tenant for the excess so withdrawn.”
 
 Id.
 
 at 175. In
 
 Joseph v. Chanin,
 
 940 So.2d 483, 486-87 (Fl.Dist.Ct. App.2006), a beneficiary of a decedent’s joint account was found liable for conversion when she refused to return money over which she was exercising dominion. The court acknowledged that in a joint-tenancy checking account with right of survivorship, each person was presumed to have an equal share in ownership, but one joint tenant may bring a conversion action against another tenant who wrongfully appropriates more than his share of the funds from the joint account.
 
 Id.
 
 at 486. Likewise, in
 
 Erhardt v. Leonard,
 
 104 Idaho 197, 657 P.2d 494, 496 (Id.Ct.App. 1983), a grandmother successfully sued her grandson for conversion of a joint savings account, when he withdrew the entire balance of the account without his grandmother’s permission or knowledge. The court addressed the ownership of the funds and the effect of the grandson’s withdrawal on that ownership.
 
 Id.
 
 at 497. In finding a claim for conversion, the court determined that the grandson was a non-contributing party and that the grandmother only had made contributions to the account; thus, the grandson’s withdrawal of the funds was an invasion of her property.
 
 Id.
 
 at 497-98.