# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00194-COA

IN THE MATTER OF THE
CONSERVATORSHIP OF FRANKIE HAYES
WARREN: DEBORAH BROADWAY

APPELLANT

v.

FRANKIE HAYES WARREN

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/26/2019 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | ROBERT O. WALLER |
| ATTORNEYS FOR APPELLEE: | JAMES MATTHEW TYRONE CLARK CLIFTON LUKE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/13/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND SMITH, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    This case concerns a dispute regarding access to funds between the parties of this

appeal.  The Chancery Court of the First Judicial District of Hinds County, Mississippi,

entered a judgment in favor of Frankie Warren.  Aggrieved, Deborah Broadway appeals.

## FACTS AND PROCEDURAL HISTORY

¶2.    Broadway first met Frankie and Bill Warren when she was fourteen years old.  The

couple had no children, and they became close to Broadway, treating her as a daughter.

Upon the death of her husband on December 24, 2014, Frankie Warren (hereinafter

"Warren") became the sole owner of two accounts at Trustmark National Bank. On February 4, 2015, Warren added Broadway to the accounts, which were to be styled as joint accounts with rights of survivorship. Broadway maintains that she had a close relationship with Warren and that she was added to the accounts so she could assist Warren with her affairs.[1] Without notice to Warren, on January 26, 2018, Broadway transferred approximately $200,000 from one of the joint accounts to CDs in her name only. On February 2, 2018, again without notice to Warren, Broadway transferred approximately $100,000 from the other joint account to CDs in her name only. Broadway maintains that she moved the money upon advice from Trustmark to keep it safe, as Warren had become forgetful. Later that day, Warren's cousin, Lillian Lovett visited her. Warren reported losing her purse containing personal and financial information. Lovett reported the incident to Trustmark. Two days later, Trustmark's head of security called Warren and informed her that Broadway had taken her money.

¶3.     On February 7, 2018, Warren filed an action against Broadway in the Hinds County Chancery Court, seeking the immediate return of her money. The following week Broadway, represented by counsel, agreed to the entry of a preliminary injunction requiring her to return all funds to Warren. Broadway complied, and the funds were deposited into accounts in Warren's name only. Warren never followed up to ensure that the preliminary injunction became permanent.

¶4.     On March 8, 2018, Warren executed a power of attorney (POA) designating her

---

[1] On April 6, 2017, Warren executed a power of attorney and a Mississippi Advance Health Care Directive designating Broadway as attorney in fact.

cousin Billy Walker as attorney in fact. The POA specified that it superseded any preexisting POA. On January 30, 2019, Walker filed an action for a conservatorship for Warren. David Marchetti, Esq., was appointed as conservator, and a no-contact order was entered against Broadway.

¶5. On August 8, 2019, Broadway filed a "Petition to Terminate Preliminary Injunction and Return Defendant to Prejudgment Status" in the original action. Both actions were before Judge Dewayne Thomas, and they were consolidated under the conservatorship's cause number. In response to Broadway's petition, Warren filed a motion to dismiss based on Mississippi Rule of Civil Procedure 12(b)(6), stating that Broadway had made no claim upon which relief could be granted and that she had also failed to join necessary parties. After briefing and a hearing, the chancellor granted the motion to dismiss. The order, however, did not really dismiss anything; rather it denied the relief requested by Broadway. After an unsuccessful motion for rehearing, Broadway appealed.

**STANDARD OF REVIEW**

¶6. Although Warren's motion is styled as a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6), we note that the chancellor considered matters outside of the pleadings in reaching his decision. Thus, the motion should be viewed as one for summary judgment. *Richardson v. Sara Lee Corp.*, 847 So. 2d 821, 823 (¶5) (Miss. 2003). In reviewing the grant of a motion for summary judgment, we are guided by Mississippi Rule of Civil Procedure 56. "The facts are viewed in the light most favorable to the non-movant," and the trial court's judgment must be affirmed "if the pleadings, depositions, answers to

3

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Germany v. Denbury Onshore LLC*, 984 So. 2d 270, 275 (¶15) (Miss. 2008) (citations omitted). We review a chancellor's grant of summary judgment on a de novo basis.[2] *Richardson*, 847 So. 2d at 823 (¶5).

## DISCUSSION

¶7. On appeal, Broadway sets forth three allegations of error by the chancellor: (1) the grant of Warren's motion to dismiss without a trial on the merits; (2) the denial of the petition to terminate the preliminary injunction and return the accounts to pre-judgment status; and (3) the finding that Broadway failed to join presumptive heirs.

### A. Whether the chancellor erred in granting Warren's motion without conducting a trial on the merits.

¶8. Broadway argues that her petition should not have been denied prior to the chancellor conducting a trial on the merits. As set forth above, despite the fact that Warren filed a motion to dismiss, the chancellor considered not only Broadway's petition, but other pleadings and evidence, thus effectively converting the motion to a summary judgment motion. Based on our review of the record, we find that Broadway was not wrongfully denied her right to a trial because the chancellor made a proper finding that Broadway had no path to success on her claims.

¶9. The right to a trial by jury is granted pursuant to the United States Constitution and

---

[2] The applicable standard for reviewing the grant of a Rule 56 or Rule 12(b)(6) motion is the same: de novo. *Richardson*, 847 So. 2d at 823 (¶5).

the Mississippi Constitution. U.S. Const. amend. VII; Miss. Const. art. 3, § 31. In Mississippi, cases brought in chancery court are normally afforded a bench trial, rather than a jury trial, although it is within the discretion of the chancellor to grant a jury trial. *In re Estate of High*, 19 So. 3d 1282, 1289 (¶33) (Miss. Ct. App. 2009). The Mississippi Supreme Court has recognized that "[t]rial judges must be sensitive to the notion that summary judgment may never be granted in derogation of a party's constitutional right to trial . . . ." *Brown v. Credit Ctr. Inc.*, 444 So. 2d 358, 362 (Miss. 1983) (citing Miss. Const. art. 3, § 31). But to be clear, "there is no violation of the right of trial . . . when judgment is entered summarily in cases where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. The United States Supreme Court has stated that "'to preserve the court from frivolous defenses, and to defeat attempts to use formal pleading as a means to delay the recovery of just demands,' rules for summary judgment are necessary and do not violate the Seventh Amendment." *Elliott v. AmeriGas Propane L.P.*, 249 So. 3d 389, 399 (¶43) (Miss. 2018) (quoting *Fid. & Deposit Co. of Maryland v. United States*, 187 U.S. 315, 320 (1902)). Put succinctly, "'no constitutional right to a jury trial exists' where a party fails to show that 'some dispute of material fact exists which a trial could resolve.'" *Id*. at (¶44) (quoting *Oglesby v. Terminal Transp. Co.*, 543 F.2d 1111, 1113 (5th Cir. 1976)).

¶10. As we discuss in detail below, the chancellor made an appropriate finding that Broadway was not entitled to the relief she sought. The chancellor did not err in ruling on the pleadings and other evidence rather than proceeding to trial, and Broadway was in no way

5

deprived of her right to a trial.

### B. Whether the chancellor erred in refusing to grant Broadway's petition.

¶11. Broadway argues that the chancellor improperly refused to restore her to her prior status as a joint tenant with Warren on her bank accounts. After his review of the pleadings submitted by the parties, along with exhibits including deposition transcripts and Broadway's discovery responses, and a hearing on the matter, the chancellor concluded that Broadway wrongfully converted Warren's funds and that Warren never intended to give Broadway any ownership interest in the funds. Broadway insists that because she had no intention of depriving Warren of the funds, there was no conversion of same. She also argues that Warren intended for her to be a beneficiary of her accounts. While we disagree with the chancellor's review under Rule 12(b)(6) instead of Rule 56, we find that the chancellor was ultimately correct in his ruling.

¶12. "To establish the tort of conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Stevens v. Smith*, 71 So. 3d 1230, 1233 (¶9) (Miss. Ct. App. 2011) (internal quotation mark omitted). Furthermore, for conversion to be found, "[t]he intent required does not have to be that of a wrongdoer." *Id.* Broadway has unequivocally admitted that she transferred funds from the joint accounts to CDs in her name only. We see this as a clear "exercise of a dominion in exclusion . . . of [Warren's] right . . . ." *See id.* at 1233-34 (¶12) (stating that the exercise of dominion over the funds, not the withdrawals, deprived two owners of their interest and

6

constituted conversion). Broadway also stated that she moved the money upon advice from Trustmark to keep it safe because Warren had become forgetful, and Broadway did not intend to take Warren's money. This does not explain why Broadway transferred the funds without first discussing it with Warren, nor does it explain why Broadway put the CDs in her name only. A simple solution would have been to require both Warren's and Broadway's signatures for any transactions. In fact, Mohammed Atarji, Warren's banker, testified that he suggested to Broadway the money be moved to a joint account for safekeeping. He further testified that moving the funds to an account in Broadway's name only was her idea. Well-intentioned or not, there is no question whether Broadway's actions constituted conversion.

¶13. We turn now to the question of intent with regard to the ownership of the joint accounts. While Broadway had the lawful authority to withdraw the funds from the accounts, whether she had the lawful authority to deprive Warren of her ownership interest in the funds by depositing them in new accounts that were not accessible to Warren is a separate issue. "[J]oint accounts are presumed to be vested in the names as given in the deposit as equal contributors and owners in the absence of evidence to the contrary; however, intent of the parties is the controlling factor." *Stevens*, 71 So. 3d at 1234 (¶13) (quoting *Drummonds v. Drummonds*, 248 Miss. 25, 31, 156 So. 2d 819, 821 (1963)). The Supreme Court in *Drummonds* explained that "where a controversy arises as to the ownership [of a joint account,] evidence is admissible to show the true situation." *Drummonds*, 248 Miss. at 31, 156 So. 2d at 821.

¶14. We have previously addressed the intent issue with regard to the ownership of joint accounts. In *Oliver v. Oliver*, 812 So. 2d 1128, 1130-31 (¶3) (Miss. Ct. App. 2002), a person named Roger was added to the account of his father and step-mother as joint tenants with rights of survivorship. Upon the death of his father, Roger's step-mother moved the funds to a different account and did not add him as a signatory. *Id.* at 1131-32 (¶8). In addressing Roger's claim to a one-half ownership, we held that as the step-mother provided evidence that Roger never contributed to the funds in the subject account and was "added to the account as a mere accommodation . . . ," the chancellor was correct in concluding that it was not the Olivers' intention for Roger to have an ownership interest in the account. *Id.* at 1133-34 (¶¶18-19). Viewed in light of *Oliver*, Broadway's responses to requests for admission are conclusive: (1) she never contributed a single dollar to the joint accounts; (2) Warren did not intend to "gift" her the funds when she was added to the accounts; and (3) the money in the joint accounts was intended to be used only for the maintenance and care of Warren. Additionally, in various pleadings, Broadway referred to the accounts as "Frankie's accounts" or "her accounts." Warren did not intend to give Broadway an ownership interest in the account, and the funds were to be used only for her care and maintenance.

¶15. When tasked with reviewing an order granting summary judgment, this Court must "affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Stroud v. Progressive Gulf Ins. Co.*, 239 So. 3d 516, 526 (¶31) (Miss. Ct. App. 2017). Based on our de novo review of the record, we find no genuine issue of material fact and see no mechanism by which Broadway might succeed on her petition.

As the chancellor stated:

> At the time that Defendant withdrew the joint funds and placed the funds into certificate[s] of deposit solely in her name, she deprived Plaintiff of her joint rights to the funds. Therefore, regardless of her intent, Defendant acted in a manner which constituted conversion. *See Stevens v. Smith*, 71 So. 3d 1230 (Miss. Ct. App. 2011). "[W]hile joint accounts are presumed to be vested in the names as given in the deposit as equal contributors and owners in the absence of evidence to the contrary, the intention of the parties is the controlling factor, and where a controversy arises as to the ownership thereof evidence is admissible to show the true situation." *Drummonds v. Drummonds*, 156 So. 2d 821 (1963). The evidence, including Defendant's own pleadings and admissions, clearly demonstrated that the funds at issue were solely owned by Plaintiff and Defendant's name was added to the account to assist Plaintiff in her financial activities. There was simply never any intent to create an ownership interest in the funds in the Defendant.

¶16. Accordingly, the chancellor did not err in denying Broadway the relief requested in her petition.

### C. Whether the chancellor erred in holding that Broadway failed to join Warren's potential heirs-at-law.

¶17. Despite denying Broadway's requested relief, the chancellor also found that Broadway's petition failed to join Warren's presumptive heirs-at-law. We note that the statute set forth by Warren in support of this issue, "Miss. Code Ann. § 93-13-83(4)(a)," does not exist. Based on the chancellor's ruling and the fact that we are in agreement with same, Broadway cannot be restored to the accounts as a joint owner, and the issue is moot.

¶18. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., AND LAWRENCE, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

9